The STATE of Ohio, Appellee,

v.

FRALEY, Appellant.

[Cite as *State v. Fraley* (1991), 77 Ohio App.3d 104.]

Court of Appeals of Ohio,
Scioto County.

No. 1868.

Decided Sept. 10, 1991.

*William T. Marshall,* Assistant Prosecuting Attorney, for appellee.
*Rick L. Faulkner,* for appellant.

GREY, Judge.

This is an appeal from a jury verdict of the Portsmouth Municipal Court finding Richard Fraley guilty of failure to obey a traffic signal in violation of Portsmouth City Ordinance 414.01 and guilty of driving with a blood-alcohol

content with a concentration of .10 of one percent or more by weight of alcohol per two hundred ten liters of breath, in violation of Portsmouth City Ordinance Section 434.01(a)(1)(3). Appellee failed to file a brief in this matter. We reverse.

On April 11, 1989 Fraley went to the American Legion Post in Portsmouth, Ohio at approximately 9:00 p.m. While there he consumed three or four beers. Fraley stated that as he left the Legion Post he put a Hall's cough drop in his mouth.

On his way home Fraley was stopped by Sergeant Horner of the Portsmouth Police Department. There are some major discrepancies about what occurred. Horner stated that while driving Fraley had gone left of center and ran a red light. Fraley stated the light was yellow and that he had not gone left of center. Horner stated that he administered three field sobriety tests to Fraley while Fraley stated that he was only given one.

Horner took Fraley to the State Highway Patrol Post to administer a B.A.C. verifier test. Fraley states that he was not observed for the full twenty minutes as required by statute. Fraley tested .221 on the B.A.C. verifier.

Fraley was arrested and charged with operating a motor vehicle while under the influence of alcohol and that he did it with a concentration of one gram or more per two hundred ten liters of breath in violation of Portsmouth City Ordinance Section 434.01(A)(1) and (3) and failure to obey a traffic signal in violation of Portsmouth City Ordinance Section 414.01. He stated that at the time of his arrest he was not advised of his rights. Fraley pleaded not guilty to all charges.

Fraley filed a motion to suppress evidence alleging errors in the B.A.C. verifier testing and Horner's failure to advise him of his rights at the time of his arrest. After a hearing on the matter, the trial court overruled Fraley's motion.

The matter proceeded to jury trial. The results of the B.A.C. verification test as well as Fraley's statements at the time of his arrest were presented as evidence. The jury found Fraley not guilty of driving while under the influence but guilty of operating a motor vehicle with a concentration of ten hundredths of one gram or more by weight of alcohol per two hundred ten liters of his breath and failure to obey a traffic signal.

Fraley appeals and assigns three errors.

First assignment of error:

"Trial court committed prejudicial error in failing to sustain Defendants Motion to Suppress B.A.C. verifier results due to failure to keep and account for proper records in compliance with Department of Health regulations."

 This assignment of error arises out of the procedures used in maintaining the B.A.C. verifier log book. Department of Health regulations require that each test be recorded, and that the machine be properly calibrated. The evidence is undisputed that the machine was tested on April 9, 1989 in test No. 2550. It was tested again on April 16, 1989 in test No. 2560, and found to be operational in both tests. Fraley's test was No. 2553, and thus was within the calibration rules set down by the Department of Health.

Fraley's objection to the calibration tests arises out of handwritten corrections made on the test log entry forms. Test No. 2550 had originally been written dated as April 8, 1989, but the eight was scratched out and a nine written in. Test No. 2560 had been written as 2260, but again someone had scratched out the two and replaced it with a five.

We find these errors to be *de minimis*, minor handwriting errors which do not affect the validity of the calibration procedures. People do make mistakes in writing digits, and correction of those errors is common. We would note that these log records are mandatory, and that where it is shown that the record has been altered it might create a situation which calls the entire record keeping process into question. It might be a better practice to require any person who corrects a writing error to initial and date the correction, but we are not a rule-making authority. While evidence that a log is not kept with the degree of accuracy needed to make it reliable might be grounds to suppress the results of a test, the evidence in this case does not demonstrate unreliability. Assignment of error one is not well taken and is overruled.

Second assignment of error:

"Trial court committed prejudicial error in failing to suppress B.A.C. results where State has failed to comply with the 20 minute observation rule as directed by the Department of Health regulations. Specifically the Trial Court erred in allowing the 20 minutes [*sic*] period to be tacked together by two separate officers without first verifying that oral intake or residue of such did not occur within the 20 minute period prior to testifying."

The facts relating to this assignment of error are not in dispute. Fraley was taken by the arresting officer to the State Highway Patrol post to be tested. They arrived at 11:30 p.m. Fraley was tested eleven minutes later, at 11:41. The Department of Health regulations require that a test subject be observed for twenty minutes prior to testing.

In its decision and entry on the motion to suppress the court found as follows:

"The Court further finds that the BAC test was administered in substantial compliance with the regulations of the Department of Health in that defen-

dant was observed for at least twenty (20) minutes prior to administering of the test, part of the time by Sgt. Horner and part of the time by Tpr. Bistor."

■ We find that the court erred. Testing the subject after only eleven minutes of observation is not substantial compliance but rather a substantial deviation from the twenty-minute regulation.

■ The trial court held that since Fraley had been handcuffed and had been observed by the arresting officer for a period before being observed by the testing officer, there was substantial compliance. If the prosecutor had filed a brief in this case, he might have argued that the syllabus in *State v. Plummer* (1986), 22 Ohio St.3d 292, 22 OBR 461, 490 N.E.2d 902 applies here. It says:

"Absent a showing of prejudice to a defendant, the results of a urine-alcohol test administered in substantial compliance with Ohio Adm.Code 3701–53–05 are admissible in a prosecution under R.C. 4511.19."

In *Plummer*, the court points out that in any system run by people there will be minor mistakes, and said, at 295, 22 OBR at 464, 490 N.E.2d at 905: "Thus there is leeway for substantial, though not literal, compliance with such regulations." Our treatment of the handwriting errors in assignment of error one is in accord with this decision.

One should not, however, use the substantial compliance standard to subvert the power of the Department of Health to make its own rules. The rules require the operator to observe the subject for twenty minutes before giving the test. The facts in this case are typical of many DUI arrests, *i.e.,* the subject has been handcuffed and observed by the arresting officer for more than twenty minutes. We must presume that the Department of Health is aware of this common arrest scenario and could decide that this period of observation is adequate to protect the validity of the test. On the other hand, this procedure may have been considered and rejected by the department for some reason. It is an infringement on its rule-making authority and usurpation of its statutory mandate for a court to hold that a violation of the rules is compliance. If the department requires twenty minutes of observation by the operator, a court may not undercut the department's rule-making authority by saying that eleven minutes by the operator coupled with the time of observation by the arresting officer is compliance.

One point should be made here about judicial economy. There is only one right way to do these tests, and possibly dozens of ways which may or may not be substantial compliance. If the tests are done correctly, there will be no issue for motions to suppress and fewer appeals. However, if the courts have to continually decide whether this deviation is compliance and that deviation is

not as each one comes up, we are encouraging litigation. We get more and more cases, send confused signals to the operators, undercut the authority of the Department of Health to regulate testing, and leave the law in a continually unresolved state. This is what the Supreme Court meant when it said there must be substantial, though not literal, compliance. Assignment of error two is sustained.

Third assignment of error:

"The verdict of the Jury and the Judgment Entry of conviction and sentence upon said verdict of the crime of operating a motor vehicle with a B.A.C. in excess of .10 are manifestly against the weight of the evidence."

 Fraley asserts that the jury verdict finding that he operated a motor vehicle with a blood-alcohol content of above .10 is against the manifest weight of the evidence. We disagree.

The evidence as presented at trial was sufficient to support the jury's verdict in the matter, despite the fact that we now hold that such evidence should have been suppressed. A reviewing court will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense could have been proven beyond a reasonable doubt. *State v. Eskridge* (1988), 38 Ohio St.3d 56, 526 N.E.2d 304. Here, had the evidence presented not been the subject of Fraley's motion to suppress it clearly would have and did lead the jurors to conclude that the elements of the offenses with which Fraley was charged had been proved beyond a reasonable doubt.

Fraley's third assignment of error is not well taken and, thus, we overrule it. However, in light of this court's holding in Fraley's second assignment of error, we reverse the trial court's judgment of conviction and, in light of the jury's verdict of not guilty of operating under the influence, order that defendant-appellant be discharged.

*Judgment reversed.*

HARSHA, J., concurs.

STEPHENSON, P.J., dissents.

HARSHA, Judge, concurring.

I concur in judgment and opinion overruling appellant's first and third assignments of error, but concur in judgment only in sustaining the second assignment of error and reversing the OMVI conviction. The basis for my vote to reverse is found in App.R. 18(C), which states:

"Consequence of failure to file briefs. If an appellant fails to file his brief within the time provided by this rule, or within the time as extended, the court may dismiss the appeal. If an appellee fails to file his brief within the time provided by this rule, or within the time as extended, he will not be heard at oral argument except by permission of the court upon a showing of good cause submitted in writing prior to argument; and in determining the appeal, the court may accept the appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action."

Accepting appellant's statement of the facts and issues as correct, I vote to reverse the judgment of the trial court as such action reasonably appears to be sustained by appellant's brief. Note, however, my decision rests upon the standard in App.R. 18(C). Had appellee filed a brief to aid us in fully considering the issue, I may or may not have reached the same result.

STEPHENSON, Presiding Judge, dissenting.

I respectfully dissent from opinion and judgment of the principal opinion with respect to appellant's second assignment of error. It is therein concluded that the twenty-minute observation period requirement must be fulfilled by one police officer, *i.e.*, the separate observation periods of two or more officers may not be stacked. I find no such requirement that one officer must observe the defendant for the full twenty minutes.

The twenty-minute requirement is set forth on the B.A.C. Verifier Test Report Form and reads as follows: "Observe Subject for twenty minutes prior to testing to prevent oral intake of any material." As specifically set forth, the purpose of the twenty minutes is to prevent the suspect from orally ingesting any substances which might affect the test results. *State v. Drake* (Sept. 20, 1988), Defiance App. No. 4–86–10, unreported, 1988 WL 100622; *State v. Hills* (July 26, 1988), Montgomery App. No. 10821, unreported, 1988 WL 79317; *Fairborn v. Hoffman* (July 2, 1985), Greene App. No. 84–CA–71, unreported, 1985 WL 8734. Since the sole purpose of the requirement is to prevent ingestion of any substance, the observation could be done by several officers. This conclusion is not a novel one. See *State v. Camper* (July 10, 1991), Wyandot App. No. 16–91–3, unreported, 1991 WL 128231; *State v. Davis* (Dec. 19, 1978), Hancock App. No. 5–78–10, unreported. In the case at bar, there was sufficient evidence presented from which the lower court could properly conclude that appellant was under observation for the entire twenty-minute observation period either by the arresting officer or the officer who performed the B.A.C. verifier test.

I would further note that appellant did not testify at the suppression hearing, and, thus, there was no evidence that appellant ingested anything during the twenty minutes. Under such circumstances, several courts of appeals have held that failure to strictly comply with the twenty-minute requirement goes to the weight of the breathalyzer results rather than their admissibility. See, *e.g., State v. Brown* (1975), 49 Ohio App.2d 104, 3 O.O.3d 161, 359 N.E.2d 706; *State v. Ernst* (July 18, 1986), Fulton App. No. F–85–15, unreported, 1986 WL 7875; *Hoffman, supra; Bellbrook v. Kyne* (July 26, 1984), Greene App. No. 83 C.A. 102, unreported, 1984 WL 5391. For all of the foregoing reasons, I would hold that the breathalyzer results were admissible and affirm the judgment of the court below.