The STATE of Ohio, Appellee,

v.

LLOYD, Appellant.

[Cite as *State v. Lloyd* (1998), 126 Ohio App.3d 95.]

Court of Appeals of Ohio,
Seventh District, Belmont County.

No. 96 BA 31.

Decided April 15, 1998.

96

*Patricia Jones–Estadt,* Belmont County Assistant Prosecuting Attorney, for appellee.

*Charles H. Bean,* for appellant.

---

VUKOVICH, Judge.

Appellant Marcus C. Lloyd appeals his conviction of driving while under the influence of alcohol, in violation of R.C. 4511.19(A)(1) and (3). For the following reasons, we affirm the judgment of the Belmont County Court of Common Pleas.

## I. FACTS

On December 24, 1995, appellant left the Beach–Hill Bar and was traveling on U.S. Route 40 when he was stopped by Trooper D.J. Herink of the Ohio State Highway Patrol. Trooper Herink had observed appellant drive over the yellow center line three times and over the right white edge line twice, by a tire width. As Trooper Herink approached appellant, he detected a strong odor of alcohol. He also noticed that appellant had bloodshot eyes and his speech was slurred. Due to these observations, Trooper Herink administered field sobriety tests, which appellant failed. Appellant was cited for violating R.C. 4511.25, driving left of center, and R.C. 4511.19(A)(1), driving while under the influence of alcohol. He was arrested and was taken to the police station in order for Trooper Herink to administer a breath–alcohol–concentration test.

Once at the police station, appellant contacted his attorney, who arrived at the station some time later. Trooper Herink observed appellant for twenty minutes, as is required by R.C. 4511.19(D) and Ohio Adm.Code 3701–53–02(B), before he administered the breath-alcohol test. Appellant registered .209 on the test, at which point Trooper Herink cited appellant for violating R.C. 4511.19(A)(3).

Appellant entered a plea of not guilty on all charges. Thereafter, on January 11, 1996, appellant filed a "Motion to Dismiss for Lack of Probable Cause to Stop." In that motion, appellant moved the court for a dismissal of the charges against him, alleging that Trooper Herink lacked probable cause to make the initial investigatory stop. Moreover, he claimed that since there was a lack of probable cause to make the stop in the first place, Trooper Herink was not entitled to administer field sobriety tests or the breath-alcohol test.

On February 20, 1996, a hearing on appellant's motion took place, during which Trooper Herink and one of the passengers in appellant's vehicle testified. The hearing was recessed, to be reconvened at a later date.

On April 23, 1996, appellant filed a motion to amend, in which he moved the court for an order allowing him to amend his motion to dismiss to read "Motion to Dismiss and/or Suppress Evidence of Field Sobriety and Blood [*sic*] Alcohol Content Test." Once the hearing on appellant's motion was reconvened, the state made no objection to the amendment, and appellant and his father testified.

On May 7, 1996, appellant's motion was overruled.

On June 18, 1996, appellant withdrew his not guilty plea and entered a plea of no contest. Accordingly, the trial court found appellant guilty. It is from this conviction that this appeal emanates, in which appellant sets forth three assignments of error for this court's review.

## II. MOTION PRACTICE IN CRIMINAL CASES

All of appellant's assignments of error concern his motion to dismiss and/or suppress. We feel it important first to address an issue of semantics which often arises in motion practice in criminal cases. Appellant initially filed what he labeled a "Motion to Dismiss" and later filed a motion to amend the caption to read "Motion to Dismiss and/or Suppress." There is absolutely no provision in the Ohio Rules of Criminal Procedure with respect to a motion to dismiss a criminal case that is founded upon a lack of probable cause. *Cleveland v. Shields* (1995), 105 Ohio App.3d 118, 123, 663 N.E.2d 726, 729 (Blackmon, J., concurring), citing *State v. Hartley* (1988), 51 Ohio App.3d 47, 48, 554 N.E.2d 950, 950–951. Accordingly, "[t]he proper remedy for Fourth Amendment violations is suppression of the evidence, not dismissal of the charges." *Id.*, citing *Blanchester v. Hester* (1992), 81 Ohio App.3d 815, 820, 612 N.E.2d 412, 415. Moreover, the United States Supreme Court has held that "[a]n illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction." *United States v. Crews* (1980), 445 U.S. 463, 474, 100 S.Ct. 1244, 1251, 63 L.Ed.2d 537, 547; see, also, *State v. Reymann* (1989), 55 Ohio App.3d 222, 225, 563 N.E.2d 749, 751–752. Therefore, in the case *sub judice,* if anything, appellant would have been entitled to suppression of some or all of the evidence against him, but he was not entitled to an automatic dismissal of the charges. If the trial court had granted his motion to suppress, the trial court could have determined that without that evidence the state could not establish its case, and at that point, the trial court could have dismissed the matter.

Regardless, even though appellant incorrectly labeled his initial motion as a "Motion to Dismiss," the trial court properly treated the motion as a motion to suppress and held the appropriate hearing. Accordingly, we are governed by the standard of review that pertains to cases that involve motions to suppress.

## III. STANDARD OF REVIEW

This court has previously concluded that our standard of review with respect to motions to suppress is whether the trial court's findings are supported by competent, credible evidence. *State v. Winand* (1996), 116 Ohio App.3d 286, 288, 688 N.E.2d 9, 11, citing *Tallmadge v. McCoy* (1994), 96 Ohio App.3d 604, 608, 645 N.E.2d 802, 804–805. Naturally, this is the appropriate standard because " '[i]n a hearing on a motion to suppress evidence, the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses.' " *State v. Hopfer* (1996), 112 Ohio App.3d 521, 548, 679 N.E.2d 321, 339, quoting *State v. Venham* (1994), 96 Ohio App.3d 649, 653, 645 N.E.2d 831, 833. However, once we accept those facts as true, we must independently determine, as a matter of law and without deference to the trial

court's conclusion, whether the trial court met the applicable legal standard. *State v. Williams* (1993), 86 Ohio App.3d 37, 41, 619 N.E.2d 1141, 1143–1144, citing *State v. Dreher* (July 28, 1992), Highland App. No. 786, unreported, at 5, 1992 WL 188501, and *State v. Fausnaugh* (Apr. 30, 1992), Ross App. No. 1778, unreported, at 3, 1992 WL 91647.

## IV. FIRST AND SECOND ASSIGNMENTS OF ERROR

Appellant addressed assignments of error one and two together in his brief, and we will do likewise. Those assignments read as follows:

"The trial court erred below in not granting defendant–appellant's motions to suppress and/or dismiss and in finding that there was probable cause and/or reasonable suspicion to stop his vehicle, since the same was not sustained by the weight of unrecanted and believable evidence in the case *sub judice.*"

"The trial court erred below in not granting defendant–appellant's motions to suppress and/or dismiss and in finding that there was probable cause to arrest defendant–appellant for D.U.I., since the same was not supported by the admissible and believable evidence in the case *sub judice.*"

In support of his first and second assignments of error, appellant alleges that no probable cause existed for the initial stop of his vehicle and, therefore, the trial court should have granted his motion to suppress and/or dismiss. Specifically, appellant claims that Trooper Herink charged him with driving left of center only as a pretext in order for Trooper Herink to meet the legal standard required for an investigatory stop. He contends that he never crossed either the yellow line or the white line as Trooper Herink had reported. Furthermore, appellant argues that Trooper Herink could not have seen him crossing the marked lines because the lines were covered with snow, which was affirmed by the testimony of one of passengers riding in appellant's vehicle. Finally, appellant claims that U.S. Route 40 is a three-lane road, and not a two-lane road as reported by Trooper Herink, so appellant could not have traveled left of center.

Appellant's first assignment of error alleges that Trooper Herink did not have probable cause and/or reasonable suspicion to stop his vehicle. His second assignment of error claims that Trooper Herink did not have probable cause to arrest appellant for driving under the influence. Accordingly, our analysis will first deal with the stop and then with the arrest.

## A. THE STOP

In support of his assignments of error, appellant argues that no probable cause and/or reasonable suspicion existed for the initial stop of his vehicle and that, therefore, the trial court should have suppressed all of the evidence obtained

following the stop. Appellant is obviously unclear as to the standard that governs a police officer who is making an initial investigatory stop. It is established law that "an officer does not need probable cause to make a traffic stop; reasonable suspicion based on specific and articulable facts that a traffic law is being violated or that criminal activity is occurring is sufficient to meet constitutional requirements." *In re Eric W., Alleged Delinquent Child* (1996), 113 Ohio App.3d 367, 369–370, 680 N.E.2d 1275, 1276, citing *State v. Wireman* (1993), 86 Ohio App.3d 451, 453, 621 N.E.2d 542, 543–544; see, also, *Delaware v. Prouse* (1979), 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660, 673–674.

The crux of appellant's argument is that the stop at issue was pretextual.[1] However, generally, an officer's observation of a traffic violation or erratic driving justifies an investigative stop. *State v. Johnson* (1995), 105 Ohio App.3d 37, 40, 663 N.E.2d 675, 677, citing *State v. Lowman* (1992), 82 Ohio App.3d 831, 837, 613 N.E.2d 692, 695–696, and *State v. Hilleary* (May 24, 1989), Miami App. No. 88–CA–5, unreported, 1989 WL 55637. The Supreme Court of Ohio has held that the validity of an investigative stop must be viewed in light of the totality of the surrounding circumstances. *State v. Bobo* (1988), 37 Ohio St.3d 177, 178, 524 N.E.2d 489, 490–491. Moreover, in reviewing a determination as to the reasonableness of a stop, an appellate court must give due deference to the police officer's training and experience. *State v. Andrews* (1991), 57 Ohio St.3d 86, 565 N.E.2d 1271.

In Ohio, when a driver commits only a *de minimis* marked-lanes violation, there must be some other evidence to suggest impairment before an officer is justified in stopping the vehicle. See *State v. Gullett* (1992), 78 Ohio App.3d 138, 145, 604 N.E.2d 176, 180–181. In *Gullett*, the Fourth District Court of Appeals concluded that the mere crossing of an edge line on two occasions did not constitutionally justify the stop. Similarly, this court has held that where there is no evidence of erratic driving, "other than what can be considered as insubstantial drifts across the lines," there is not sufficient evidence to justify an investigative stop. *State v. Drogi* (1994), 96 Ohio App.3d 466, 469, 645 N.E.2d 153, 155. However, as discussed above, under certain circumstances, an incident

---

1. It is important for us to note the holding in *Dayton v. Erickson* (1996), 76 Ohio St.3d 3, 665 N.E.2d 1091, which addressed the issue of pretextual stops, even though the facts of that case are distinguishable from those in the instant case and the decision is not directly relevant to our analysis. In *Erickson*, the Supreme Court of Ohio followed the decision of the United States Court of Appeals for the Sixth Circuit in *United States v. Ferguson* (C.A.6, 1993), 8 F.3d 385, and held:

"Where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity."

or incidents of crossing lines in the road may give a police officer reasonable suspicion to stop a vehicle, depending on those factors that indicate the severity and extent of such conduct. *Id.; State v. Johnson,* 105 Ohio App.3d at 40, 663 N.E.2d at 677.

When viewing the stop in the case *sub judice* in the totality of the circumstances, we conclude that the evidence presented supports the ruling of the trial court that Trooper Herink was justified in making the initial traffic stop. Furthermore, the record reveals that the facts in the instant case can be distinguished from the facts in *Drogi, supra,* and are more analogous to the facts in *State v. Gibson* (Apr. 4, 1995), Columbiana App. No. 92–C–21, unreported, 1995 WL 152978.

In *Drogi,* the appellant was traveling on a four-lane divided highway. He went over the center line on one occasion, weaved within his own lane, and crossed the edge line once. No evidence was presented with respect to how far the appellant drifted over the edge line. However, in the case at bar, Trooper Herink testified that the road upon which appellant was driving is a two-lane road that has a third turning lane for traffic going either direction, running the length of the road, and is not considered a three-lane road, as appellant contends. He explained that there is a yellow line dividing the three lanes, which appellant was legally bound to stay to the right, within his lane of travel. Therefore, a vehicle that crosses the yellow line is actually traveling left of center. Trooper Herink also stated that the edge line, next to the berm of appellant's lane, was marked by a white line. Trooper Herink's testimony was as follows with respect to his observations of appellant's driving:

"[H]e was observed crossing over the center line on three occasions and he drifted off to the right side crossing over the white edge line twice. And at that point, he stopped at the red light at U.S. 40 and Mall Road and continued westbound crossing the white edge line once. At that time, I activated my overhead lights * * *."

All of Trooper Herink's observations took place within a distance of half a mile to one mile, and at approximately 2:35 a.m. Trooper Herink also testified that appellant crossed both the yellow line and the white berm line by one tire width. Therefore, unlike the facts in *Drogi,* appellant's vehicle did not cross the center line dividing two lanes of traffic heading in the same direction. Instead, he crossed, on three occasions, the yellow line that marked the turning lane, which could have been occupied by traffic traveling in the opposite direction. In *Gibson, supra,* this court concluded that the state trooper had reasonable suspicion to stop after he observed the appellant's weaving, driving onto the white edge line, and driving over the white edge line twice for approximately three to five miles. In the case at bar, there were even more flagrant violations than

those found in *Gibson* and within a shorter distance. In light of these circumstances, it is clear that Trooper Herink did not observe a "minuscule, momentary edge-line crossing amounting to nothing more than a technical marked-lanes violation." *State v. Johnson*, 105 Ohio App.3d at 41, 663 N.E.2d at 678. Accordingly, Trooper Herink witnessed enough erratic driving on the part of appellant to rise to the level of reasonable suspicion, thereby allowing him to make an investigative stop.

 Even though appellant and his witnesses claimed that the roads were completely snow-covered and Trooper Herink could not have seen appellant move over the lines, Trooper Herink testified that the roads were merely "snow-checked" and that he observed appellant travel left of the yellow line three times. Certainly, the trial judge could have found Trooper Herink's testimony more credible than that of appellant or his witnesses. At a suppression hearing, it is axiomatic that "the evaluation and the credibility of the witnesses are issues for the trier of fact." *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972, 982. Deference should be given to the trial judge, who is also the trier of fact, because the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 410–411, 461 N.E.2d 1273, 1276–1277. Therefore, when viewing the stop in the totality of the circumstances, we conclude that the evidence supports the ruling of the trial court that Trooper Herink had a reasonable suspicion that appellant was violating a traffic law when he made the initial stop in this case. Appellant's first assignment of error is without merit.

## B. THE ARREST

 Due to our determination that the stop was legally proper, we must now address the circumstances surrounding appellant's arrest. Before an arrest can take place, the police officer must have probable cause to believe that the individual committed a crime. *State v. Timson* (1974), 38 Ohio St.2d 122, 67 O.O.2d 140, 311 N.E.2d 16, paragraph one of the syllabus. It has been established that "[p]robable cause exists where there is a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious person in the belief that an individual is guilty of the offense with which he or she is charged." *State v. Medcalf* (1996), 111 Ohio App.3d 142, 147, 675 N.E.2d 1268, 1271, citing *Huber v. O'Neill* (1981), 66 Ohio St.2d 28, 30, 20 O.O.3d 17, 19, 419 N.E.2d 10, 12, quoting *Ash v. Marlow* (1851), 20 Ohio 119, 1851 WL 16, paragraph one of the syllabus. We must now determine whether Trooper Herink had probable cause to arrest appellant for driving under the influence of alcohol.

Appellant was initially arrested for violating R.C. 4511.19(A)(1), which provides that "[n]o person shall operate any vehicle * * * if * * * [t]he person is under the influence of alcohol." In such a case, the issue regarding probable cause turns on the court's assessment of whether, "at the moment of the arrest, the officer had knowledge from a reasonably trustworthy source of facts and circumstances sufficient to cause a prudent person to believe that the suspect was driving while under the influence of alcohol." *State v. Medcalf,* 111 Ohio App.3d at 147, 675 N.E.2d at 1271, citing *Beck v. Ohio* (1964), 379 U.S. 89, 91, 85 S.Ct. 223, 225–226, 13 L.Ed.2d 142, 145, and *State v. Timson,* at paragraph one of the syllabus. Moreover, the arrest merely has to be supported by the arresting officer's observations of indicia of alcohol consumption and operation of a motor vehicle while under the influence of alcohol. *State v. Van Fossen* (1984), 19 Ohio App.3d 281, 283, 19 OBR 452, 453–454, 484 N.E.2d 191, 193–194; *State v. Taylor* (1981), 3 Ohio App.3d 197, 198, 3 OBR 224, 225, 444 N.E.2d 481, 481–482. Basically, courts look at the totality of the circumstances when reviewing this type of case. *State v. Medcalf,* 111 Ohio App.3d at 147, 675 N.E.2d at 1271.

In the instant case, when looking at the facts in the totality of the circumstances, Trooper Herink had probable cause to arrest appellant. Trooper Herink testified that when he approached appellant, he noticed a strong odor of an alcoholic beverage and observed that appellant's eyes were bloodshot. Furthermore, appellant's speech was slurred and appellant rambled when he spoke to Trooper Herink. Additionally, appellant failed the field sobriety tests, which indicated to Trooper Herink that, in all likelihood, appellant would test over the legal limit. Moreover, appellant admitted to Trooper Herink that he had consumed a few drinks earlier in the evening, and appellant acknowledged that fact during his testimony at the hearing on his motion. Therefore, in light of the lawful stop, the odor of alcohol, appellant's general appearance, appellant's performance on the field sobriety tests, and appellant's admission that he had been drinking, Trooper Herink had probable cause to detain and arrest appellant. See *State v. Medcalf,* 111 Ohio App.3d at 148, 675 N.E.2d at 1271–1272; *State v. Williams* (1992), 83 Ohio App.3d 536, 539, 615 N.E.2d 317, 319. Accordingly, we find appellant's second assignment of error to be without merit.

## V. THIRD ASSIGNMENT OF ERROR

Appellant's third assignment of error reads:

"The trial court erred below in not suppressing the breathalyzer test and all statements of the defendant–appellant, since Trooper Herink refused to allow defendant–appellant to consult in private with his attorney, thereby denying him his Sixth Amendment right to counsel, pursuant to the U.S. Constitution."

Appellant was charged with a violation of R.C. 4511.19(A)(3), which prohibits driving when a person has a concentration of ten-hundredths of one gram or more by weight of alcohol per two hundred ten liters of his breath. Appellant tested .209 on the breath-alcohol test administered by Trooper Herink. Initially, it should be noted that probable cause is required for the administration of a breath-alcohol test. *Xenia v. Wallace* (1988), 37 Ohio St.3d 216, 524 N.E.2d 889. Therefore, there would be no justification for the administration of such a test without evidence of impaired motor coordination. *State v. Finch* (1985), 24 Ohio App.3d 38, 40, 24 OBR 61, 63–64, 492 N.E.2d 1254, 1256–1257. There is no question in the case at bar that appellant had impaired motor coordination, as was shown by his failure of the field sobriety tests, in addition to his slurred speech.

Appellant does not claim that Trooper Herink lacked probable cause to administer the breath-alcohol test but, instead, argues that Trooper Herink did not allow appellant to meet with his attorney in private, which denied him his Sixth Amendment right to counsel. Accordingly, appellant claims that the breath-alcohol test and "all statements of" appellant should have been suppressed by the trial court. We will first address appellant's argument in general and then we will address the suppression issue.

## A. ALLEGED DENIAL OF SIXTH AMENDMENT RIGHT TO COUNSEL

Once appellant was arrested for driving under the influence of alcohol, Trooper Herink brought him to the police station to conduct a breath-alcohol test. In *Bolivar v. Dick* (1996), 76 Ohio St.3d 216, 218, 667 N.E.2d 18, 20, the Supreme Court of Ohio stated:

"R.C. 4511.19(D) states that any bodily substance collected for the purpose of determining whether a person is in violation of the statute 'shall be analyzed in accordance with the methods approved by the director of health * * *.' Regulations promulgated by the Director of Health in Ohio Adm.Code 3701–53–02(B) state in pertinent part that '[b]reath samples shall be analyzed according to the operational checklist for the instrument being used.' Thus, the operational checklist, which is part of the BAC Verifier Test Report Form * * *, provides the 'methods approved by the director of health' for the operation of the BAC Verifier. * * * The first item on the operational checklist is 'Observe subject for twenty minutes prior to testing to prevent oral intake of any material.' "

Accordingly, Trooper Herink was required to observe appellant for a twenty-minute period before he administered the breath-alcohol test. Otherwise, he would have taken the risk that the test results would be inadmissible because he did not follow the mandatory twenty-minute observation period. See *State v. Fraley* (1991), 77 Ohio App.3d 104, 108, 601 N.E.2d 108, 110–111; *State v. Strock*

(Aug. 30, 1993), Columbiana App. No. 93–C–35, unreported, 1993 WL 343119. Moreover, R.C. 4511.19(D)(1) dictates the time frame within which a police officer must act in order for the results of a breath-alcohol test to be admissible. That section reads as follows:

"In any criminal prosecution * * * for a violation of this section * * * the court may admit evidence on the concentration of alcohol * * * in the defendant's * * * breath * * * at the time of the alleged violation as shown by chemical analysis of the defendant's * * * breath * * * within two hours of the time of the alleged violation."

Therefore, Officer Herink had merely a two-hour time frame from the moment it was discovered that appellant was operating his vehicle while under the influence of alcohol to complete the twenty-minute observation period and actually administer the breath-alcohol test.

 Once appellant was arrested, he had the opportunity to make a telephone call. He contacted his counsel and spoke with him privately. Subsequently, appellant's counsel arrived at the station and asked Trooper Herink whether he could speak with appellant alone. However, Trooper Herink explained to him that he had to continuously observe appellant for a twenty-minute period. Trooper Herink further explained that he already had problems with appellant because he had witnessed appellant place a penny in his mouth in an attempt to alter his results on the breath-alcohol test. Trooper Herink suggested that appellant and his counsel move to the back corner of the room, indicating that he would stay by the doorway at a sufficient distance for him to continue observing appellant. Apparently, appellant and his counsel moved to the corner of the room and conversed. There is absolutely no evidence in the record that any statements from that conversation were overheard by Trooper Herink or presented in evidence against appellant. Therefore, appellant's claim that "all statements of" appellant should have been suppressed by the trial court has no merit.

 As mentioned above, appellant's argument in his third assignment of error is that due to the above-listed events, he was denied his Sixth Amendment right to counsel because he did not have an opportunity to speak with his counsel in private. In *Dobbins v. Ohio Bur. of Motor Vehicles* (1996), 75 Ohio St.3d 533, 537, 664 N.E.2d 908, 910–911, the Supreme Court of Ohio followed its decision in *McNulty v. Curry* (1975), 42 Ohio St.2d 341, 71 O.O.2d 317, 328 N.E.2d 798, and held that "the right to counsel associated with the protection against self-incrimination contained in the Fifth Amendment to the United States Constitution, or as guaranteed by the Sixth Amendment, does not apply to the stage at which the officer requested the chemical test for alcohol content." The United States Supreme Court has held that the Sixth Amendment right to counsel for

criminal defense applies only to the "critical stages" of criminal proceedings. *United States v. Gouveia* (1984), 467 U.S. 180, 189, 104 S.Ct. 2292, 2298, 81 L.Ed.2d 146, 154–155; *United States v. Ash* (1973), 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619; *United States v. Wade* (1967), 388 U.S. 218, 224, 87 S.Ct. 1926, 1930–1931, 18 L.Ed.2d 1149, 1155–1156. A breath- or blood-alcohol test is merely a preparatory stage of the prosecution and is not considered a critical stage at which the Sixth Amendment right to counsel would attach. *Dobbins*, 75 Ohio St.3d at 537, 664 N.E.2d at 910–911, citing *McNulty*, 42 Ohio St.2d at 344, 71 O.O.2d at 318–319, 328 N.E.2d at 801. Furthermore, in *Nyflot v. Minnesota Commr. of Pub. Safety* (1985), 474 U.S. 1027, 1029, 106 S.Ct. 586, 587–588, 88 L.Ed.2d 567 568–569, the United States Supreme Court rejected a petitioner's argument that the Sixth Amendment right to counsel attaches prior to taking an breath-alcohol test. Accordingly, since the above-cited cases are legally persuasive and controlling on this issue, we conclude that appellant was not denied his Sixth Amendment constitutional right to counsel. Appellant's third assignment of error is without merit.

## B. MOTION TO SUPPRESS BREATHALYZER TEST

Although we have already concluded that appellant did not have a Sixth Amendment right to counsel prior to taking the breath-alcohol test, and even though appellant did not raise the argument that he was denied his statutory right to counsel, we feel that it is important to briefly address the subject of suppression when there is an alleged violation of R.C. 2935.20 in a prosecution arising under R.C. 4511.19(A)(3).

R.C. 2935.20 states:

"After the arrest, detention, or any other taking into custody of a person, with or without a warrant, such person shall be permitted forthwith facilities to communicate with an attorney at law of his choice who is entitled to practice in the courts of this state, or to communicate with any other person of his choice for the purpose of obtaining counsel. Such communication may be made by a reasonable number of telephone calls or in any other reasonable manner. Such person shall have a right to be visited immediately by any attorney at law so obtained who is entitled to practice in the courts of this state, *and to consult with him privately*. No officer or any other agent of this state shall prevent, attempt to prevent, or advise such person against the communication, visit, or consultation provided for by this section." (Emphasis added.)

The Supreme Court of Ohio addressed the issue regarding suppression with respect to a violation of this section in *Fairborn v. Mattachione* (1995), 72 Ohio St.3d 345, 650 N.E.2d 426. *Mattachione* was certified to the Supreme Court

on the question "whether or not the exclusionary rule is applicable as a sanction for violation of R.C. 2935.20." In a four-three *per curiam* decision, the court answered the question in the negative. Therefore, even if appellant had made the appropriate argument with respect to an alleged statutory violation of his right to counsel, the trial court, regardless, properly denied his motion to suppress.

Based on the foregoing reasons, appellant's conviction is affirmed.

*Judgment affirmed.*

Cox and WAITE, JJ., concur.