OPINION
Defendant-appellant Brandie Earich appeals the decision of the East Liverpool Municipal Court which overruled her suppression motion. For the following reasons, the judgment of the trial court is affirmed.
 STATEMENT OF THE CASE
Near 2:00 a.m. on August 21, 1999, an Ohio State Highway Patrol trooper initiated a traffic stop of appellant's vehicle. Thereafter, appellant was arrested for driving under the influence in violation of R.C.4511.19(A)(1), driving with a prohibited level of alcohol in violation of R.C. 4511.19(A)(3), and improperly leaving marked lanes in violation of R.C. 4511.33(A).
Appellant filed a motion to suppress on the grounds that the trooper lacked reasonable suspicion to stop her vehicle. The motion hearing proceeded on the issues of reasonable suspicion to stop and probable cause to arrest. The trooper testified that he was behind appellant's vehicle on a freeway with four lanes heading in the same direction. Upon approaching a curve, the trooper noticed appellant abruptly cross the broken white line on the left. She then swerved over the broken white line on the right. After she drifted back into her lane, she again swerved over the line on the right. The trooper concluded that in less than three tenths of a mile, appellant crossed three lines by ten to twelve inches each. (Tr. 7). He testified that if cars were approaching in either of the lanes next to appellant, she would have hit those cars. (Tr. 39).
Upon approaching the vehicle, the trooper noticed a moderate smell of alcohol on appellant. She admitted that she had "a couple" drinks that night. (Tr. 53). The trooper testified that he then administered three field sobriety tests. He stated that four of the six clues for intoxication appeared when he administered the horizontal gaze nystagmus (HGN) test, four of the nine clues appeared when he administered the walk and turn, and three of the five clues appeared when he administered the one leg stand. (Tr. 13-17). The trooper testified that appellant consented to a portable breath test which registered .105. She was then transported to the station for a breathalyzer test.
Appellant testified that she did not swerve as the trooper described but rather changed lanes after using her turn signal. (Tr. 44). She also stated that she took the portable breath test prior to performing any field sobriety tests. (Tr. 45). She then complained that she could not perform the tests due to bad knees, high heels and, when she took her shoes off, pieces of gravel on the berm of the road.
After hearing the testimony, the court overruled appellant's motion, finding that the trooper possessed reasonable suspicion to stop appellant and probable cause to arrest her. Thereafter, appellant pled no contest to the R.C. 4511.19(A)(3) citation which contained a breathalyzer result of .154. The state dismissed the remaining charges.
After sentencing, appellant filed timely notice of appeal. We note that appellee's brief with a one page argument was filed more than five months after the filing of appellant's brief. Since leave to file the brief instanter was not sought, we are disregarding appellee's brief.
 ASSIGNMENT OF ERROR
Appellant's sole assignment of error contends:
 "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY NOT SUSTAINING THE DEFENDANT'S MOTION TO SUPPRESS AND MOTION TO DISMISS."
Appellant claims that the trooper lacked reasonable and articulable suspicion to make a traffic stop. She argues that under the totality of the circumstances, the lack of reasonable suspicion is clear. Specifically, she notes that she was driving under the speed limit and claims that she used her turn signals to change lanes for exit purposes. She appears to admit drifting over one line but points out that she did not do so in a jerking motion. In support of her arguments, she citesCity of Hamilton v. Lawson (1994), 94 Ohio App.3d 462 for the proposition that one small weave within the motorist's own lane of travel does not give rise to reasonable suspicion that the motorist was driving under the influence of alcohol.
When considering a decision on a suppression motion, the reviewing court defers to the trial court's findings of fact if they are supported by competent and credible evidence. Village of Barnesville v. Wayble
(Mar. 31, 2000), Belmont App. No. 98BA36, unreported, 3. The reviewing court then independently determines as a matter of law whether the trial court applied the proper legal standard. Id. When evaluating the propriety of a investigatory stop, the proper legal standard is reasonable suspicion. As such, in order for an officer to initiate a traffic stop, there must exist specific and articulable facts which, taken together with any rational inferences that can be drawn from those facts, reasonably warrant the stop. Terry v. Ohio (1968), 392 U.S. 1, 21-22. To determine whether an officer had reasonable suspicion to stop a vehicle, one must evaluate the totality of the circumstances. State v. Bobo
(1988), 37 Ohio St.3d 177, 178.
It is well-established that drifting or weaving incidents may give rise to reasonable suspicion to stop a vehicle depending on the extent of the incidents. See, e.g., State v. Carter (June 14, 2000), Belmont App. No. 99BA7, to be reported; State v. Lloyd (1998), 126 Ohio App.3d 95; Statev. Gibson (Apr. 4, 1995), Columbiana App. No. 92C21, unreported. In the case at bar, the trooper testified that appellant engaged in erratic driving by crossing over the broken white line to her left, then crossing through her lane and over the broken white line to the right, then moving back into her lane only to once again cross over the broken white line to the right. Each crossing was more than de minimis as the trooper estimated that appellant's vehicle crossed over the lines by ten to twelve inches. Furthermore, this occurred in less than three tenths of a mile. According to the trooper's testimony, no turn signals were used during the course of this weaving, and had a car been approaching on either side, appellant would have hit it. Lastly, the weaving incidents occurred after 2:00 a.m. See Bobo, 37 Ohio St.3d at 179 (stating that time of the incident is relevant in a totality of the circumstances analysis of reasonable suspicion).
Regardless of appellant's version of her line-crossing and turn signal usage, it is well-established that the weight of the evidence and the credibility of the witnesses' testimony is primarily the province of the trier of fact. State v. Smith (1997), 80 Ohio St.3d 89, 105-106; Statev. Mills (1992), 62 Ohio St.3d 357, 366; State v. Fanning (1982),1 Ohio St.3d 19, 20. The trial court chose to believe the trooper's testimony, and appellant points out no reason to hold that his testimony is incredible. Viewed through the eyes of a reasonable person on the scene who must react as the events transpire, the court did not err in finding that the trooper had a reasonable and articulable suspicion that a traffic violation was occurring. Accordingly, appellant's argument that the trooper lacked reasonable suspicion to stop her vehicle is without merit.
Although the suppression hearing also proceeded on the issue of probable cause to arrest, appellant's brief does not clearly argue that the facts fail to establish a lack of probable cause. Rather, it seems that appellant is merely stating that without reasonable suspicion to stop, probable cause cannot develop from that stop due to the fruit of the poisonous tree doctrine. Regardless, because the brief mentions probable cause to arrest, we shall briefly address the issue.
After stopping a vehicle based upon a reasonable suspicion, an officer may only arrest the motorist for driving under the influence if probable cause develops during the stop. State v. Brandenstein (Dec. 30, 1999), Belmont App. No. 98BA30, unreported, 3. Specifically, the facts and circumstances known to the officer must be sufficient to cause a prudent person to believe that the offender was driving while under the influence of alcohol. State v. Homan (2000), 89 Ohio St.3d 421, 427, citing Beckv. Ohio (1964), 379 U.S. 89, 91. To determine whether the trooper had probable cause to arrest appellant for driving under the influence, we must once again evaluate the totality of the circumstances. Homan,89 Ohio St.3d at 427.
In the present case, the trooper observed the aforementioned incidents of weaving. Upon approaching appellant, the trooper noticed a moderate smell of alcohol. Appellant admitted to him that she had consumed alcohol that night. She exhibited four of the six clues on the HGN in that both eyes displayed a distinct nystagmus at maximum deviation and a lack of smooth pursuit. The HGN has been described as the single most accurate field test, State v. Brass (1990), 51 Ohio St.3d 123, 126, if done correctly. Homan, 89 Ohio St.3d at 425.
Appellant also exhibited four of the nine clues on the walk and turn. Apparently, she moved her feet to balance herself while listening to instructions, failed to touch her heel to her toe six times, raised her arms too high and turned incorrectly. On the one leg stand, appellant exhibited three out of five clues by swaying, hopping and putting her foot down twice. Even without the .105 result on the portable breath test to which appellant consented, probable cause existed that appellant had been driving under the influence of alcohol. Accordingly, any lack of probable cause to arrest argument is without merit.
For the foregoing reasons, the judgment of the trial court is hereby affirmed.
DONOFRIO, J., concurs, WAITE, J., concurs.