[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JUDGMENT ENTRY.
{¶ 1} This appeal, considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, is not controlling authority except as provided in S.Ct.R.Rep.Op. 2(G)(1).
{¶ 2} The state appeals a grant of a motion to suppress for defendant-appellee Yvonne Brower. The trial court granted Brower's motion on the wrong legal standard — the court did not specifically determine whether there was valid consent for the search. Therefore, we reverse and remand.
{¶ 3} At the hearing on the suppression motion, the parties agreed that consent to the search was the only issue before the court. The parties presented testimony that substantially differed. The state presented testimony by two Hamilton County Sheriff Deputies and an employee from Children's Services. The deputies testified that on September 5, 2001, their supervisor told them that Yvonne Brower had made a phone call the night before to the principal of the local elementary school, saying that if her child could not attend that school, she would drive her van into the school and kill herself. The supervisor asked the deputies to speak to Brower about the incident.Brower was not home when the officers first arrived, but she soon drove up in her van with four of her six children. Brower did not want to answer any questions and refused to allow the officers to enter her home. The officers, finding Brower uncooperative and irate, decided to take Brower into custody, "for her own safety and the safety of her children."
{¶ 4} The deputies testified that Brower's van was filthy, with a strong smell of mold and mildew, and that one of the children did not have shoes and had dirty feet. The deputies became concerned about the condition of the inside of the house and felt it necessary to inspect it. By this time, Brower's husband, David, had arrived home. Both deputies testified that David Brower gave consent to search the family home, which they then did.
{¶ 5} The Children's Services employee testified that when he arrived, the deputies had already been in the house and searched it. The employee then heard David Brower reluctantly give consent to the deputies to re-enter the home.
{¶ 6} Brower and her husband each testified at the suppression hearing. Brower testified that she did not make a phone call to the elementary school principal on the night of September 4, 2001. She further testified that on the evening of the alleged phone call, two deputies were outside her house, taking pictures through the windows. Both Brower and her husband testified that the deputies searched the property for forty minutes and eventually spoke with the couple. The Browers indicated that all was fine and offered to bring the children out to show the officers no one was in danger. The officers were satisfied and left.
{¶ 7} The next morning, two deputies were at her house when Brower arrived home with her children. The deputies repeatedly asked to enter the house. Brower testified that when she refused, they said they had no choice but to arrest her for obstructing official business, handcuffed her, and placed her in a police cruiser.
{¶ 8} At this point, David Brower arrived home. He testified that he refused to give consent to enter the house, but that while he was in the back yard with his children, one of the officers took Brower's keys and entered the house. The officer exited from the house, and David Brower and the children went in. The officer then knocked on the door and asked to come inside the house again, but David Brower said no and shut the door. He testified that the officer knocked and was refused again, but that this time he put his foot inside the front door and walked in anyway. The officer left the house again, and, about twenty minutes later, the employee from Children's Services arrived. The officers then entered the house for the third time, without consent.
{¶ 9} With evidence obtained from the search, Brower was charged with six counts of child endangerment. Brower moved to suppress the evidence obtained in the search, and the trial court granted the motion.
{¶ 10} We employ a two-step analysis in reviewing a trial court's ruling on a suppression motion.[1] We first review the trial court's findings of fact to determine whether the trial court's findings are supported by competent, credible evidence.[2] The trial court is the trier of facts and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility.[3] We must accept the trial court's factual findings and the trial court's assessment of witness credibility, unless they are clearly erroneous.[4] Second, once we accept those properly supported facts as true, we must independently determine, as a matter of law and without deference to the trial court's conclusion, whether the trial court made the correct ruling of law.[5]
{¶ 11} In a suppression hearing that does not involve a warrant, the state has the burden of proving the validity of a warrantless search and seizure. In this case, the state argued that there was valid consent for the search, and that was the only issue presented for the trial court's consideration.
{¶ 12} But the trial court did not, from our review of the record, directly decide the issue of consent. It seems, rather, that it focused on the issues of probable cause and exigent circumstances, neither of which were at issue. The sole issue was whether the officers had consent to enter the residence. The trial court should have made that specific determination. Therefore, we reverse the trial court's judgment and remand this case with instructions to review the record and to make a finding on the issue of consent. Obviously, if the trial court determines that there was not valid consent to search, the motion to suppress should be granted. Because consent was the only issue before the court, if there was consent, the motion should be overruled.
{¶ 13} Further, a certified copy of this Judgment Entry shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Painter, P.J., Doan and Sundermann, JJ.
[1] See State v. Glenn (Oct. 20, 2000), 1st Dist. Nos. C-000206 and C-000210.
[2] See State v. Hernandez, 10th Dist. No. 01AP-23, 2001-Ohio-4086, at ¶ 7, citing State v. Klein (1991), 73 Ohio App.3d 486, 488,597 N.E.2d 1141.
[3] See State v. Klein (1991), 73 Ohio App.3d 486, 488,597 N.E.2d 1141.
[4] See State v. Babcock (Feb. 13, 1997), 4th Dist. No. 95CA40.
[5] See State v. Jones (Mar. 2, 2000), 8th Dist. No. 75843, citingState v. Lloyd (1998), 126 Ohio App.3d 95, 100, 709 N.E.2d 913.