[Cite as *State v. Griffith*, 2011-Ohio-6410.]

STATE OF OHIO, MONROE COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | CASE NO.   11 MO 3 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| - VS - | ) | O P I N I O N |
| | ) | |
| DANNELLE GRIFFITH, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:          Criminal Appeal from County Court, Case
                                                          No. 2010CRB329.

JUDGMENT:                                          Affirmed.


APPEARANCES:
For Plaintiff-Appellee:                          Attorney L. Kent Riethmiller
                                                          Prosecuting Attorney
                                                          Attorney Thomas Hampton
                                                          Assistant Prosecuting Attorney
                                                          101 North Main Street, Room 15
                                                          Woodsfield, Ohio  43793

For Defendant-Appellant:                     Attorney Joseph Vavra
                                                          132 West Main Street
                                                          P.O. Box 430
                                                          St. Clairsville, Ohio  43950


JUDGES:
Hon. Joseph J. Vukovich
Hon. Gene Donofrio
Hon. Mary DeGenaro


                                                          Dated:  December 12, 2011

VUKOVICH, J.

{¶ 1}  Defendant-appellant Dannelle Griffith appeals the decision of the Monroe County Court denying her motion to suppress.  Griffith asserts that the officer's observation of her driving and hitting the curb twice, stumbling out of the car, unusual staring, constricted pupils and the information from her employer about her allegedly being "high" did not establish probable cause for stopping and arresting her.  For the reasons expressed below, we disagree with Griffith's position and affirm the judgment of the trial court.

## STATEMENT OF FACTS

{¶ 2}  In the evening hours of July 7, 2010, Griffith was terminated from her position with Monroe County Care Center for failing to take a drug screening test.  Following her discharge, someone from Monroe County Care Center called the Village of Woodsfield Police Department and indicated that they believed Griffith was "high" on drugs.  They were told that she left the premises in her silver Cavalier.

{¶ 3}  Officers Young and Neuhardt responded to the call; they drove to Griffith's residence to see if she made it home.  When she was not there, they began patrolling and after a few minutes they got behind her on East Church Street.  The officers did not stop Griffith, but rather followed her to her home.  During this drive, they observed her hit the curb twice.  The officers initiated a stop at Griffith's home.

{¶ 4}  Officer Young spoke with Griffith and asked her to exit her vehicle, which she did.  Officer Young then decided to take her to the police department.  She was not informed that she was under arrest, but the officer stated that he considered her in custody at that point.  Griffith was not *Mirandized*.

{¶ 5}  At some point prior to taking her to the police department, the officers observed a piece of plastic with white residue on it on the passenger seat.  They also searched her glove box and found drug paraphernalia.

{¶ 6}  At the police department a urine sample was taken, which tested positive with "Hydrocodone 5,335 ng/ml."  She also gave the officers permission to search her

purse. In the purse, the officer found two pills of Hydrocodone that were not in a script bottle. Tr. 22.

{¶ 7} As a result of the above, Griffith was charged with drug possession, a first degree misdemeanor in violation of R.C. 2925.11; drug paraphernalia, a fourth-degree misdemeanor in violation of R.C. 2925.14(C)(1); and operating a motor vehicle while under the influence of alcohol or drugs, a first-degree misdemeanor in violation of R.C. 4511.19(A)(1)(d) (third offense within six years).

{¶ 8} Griffith pled not guilty and filed a motion to suppress. The motion sought to suppress any opinion and observation of Officer Young regarding Griffith's sobriety level, any statements she made to the Officers while in route to the police department and while at the police department. She also asserted that suppression should be granted because the officers did not have probable cause to stop, detain or arrest her. The state opposed the motion. The court granted the motion in part and denied it in part. The court found that the search of the car was without a warrant, was not consented to, and was not incidental to the arrest. Thus, the drug paraphernalia collected during the search of the car and glove box., i.e. the snort straw found in the glove box, was excluded. Also, the court suppressed a statement made by Griffith concerning her hitting something with her vehicle because she was under arrest at the time but had not been *Mirandized*. However, the trial court found that the officers did have probable cause to stop, detain and test Griffith. Therefore, the officers' observations of her driving and opinions on her impairment were not suppressed. Likewise, the drugs found in her purse were also not suppressed.

{¶ 9} Following that ruling, Griffith pled no contest to the possession of drugs and driving while under the influence of drugs or alcohol charges; the state dismissed the drug paraphernalia charge. The trial court accepted the plea, found Griffith guilty, and sentenced her. She received 120 days in jail with 90 days suspended. The court stated she could either serve the 30 days in jail or complete a 90 day residential drug and alcohol treatment program. She was fined $1,050, but the court suspended $200 of that fine. The court ordered two years of supervised probation, but indicated it would be terminated after one year if she fully complied. Additionally, her driver's license was suspended for one year.

<u>ASSIGNMENT OF ERROR</u>

{¶ 10} "THE COURT ERRED IN OVERRULING THE MOTION OF THE APPELLANT TO SUPPRESS AS THE OFFICERS LACK PROBABLE CAUSE TO STOP OR MAKE THE ARREST OF APPELLANT."

{¶ 11} Griffith pled no contest to the charges; therefore, the trial court's suppression ruling is reviewable on appeal. Crim.R. 12(I); *State v. Ulis* (1992), 65 Ohio St.3d 83. The standard of review for a suppression ruling is two-fold. *State v. Dabney,* 7th Dist. No. 02BE31, 2003-Ohio-5141, at ¶9, citing *State v. Lloyd* (1998), 126 Ohio App.3d 95, 100-101. Since the trial court is in the best position to evaluate witness credibility, an appellate court must uphold the trial court's findings of fact if they are supported by competent, credible evidence. Id., citing *State v. Winand* (1996), 116 Ohio App.3d 286, 288, citing *Tallmadge v. McCoy* (1994), 96 Ohio App.3d 604, 608. However, once an appellate court has accepted those facts as true, the court must independently determine as a matter of law whether the trial court met the applicable legal standard. Id*.,* citing *State v. Clayton* (1993), 85 Ohio App.3d 623, 627. This determination is a question of law of which an appellate court cannot give deference to the trial court's conclusion. Id., citing *Lloyd*, supra*.*

{¶ 12} The argument in this appeal concerns not only the legality of the stop, but the legality of the arrest. We take this opportunity to emphasize that a stop and an arrest are wholly distinct concepts which are supported by wholly distinct standards. An officer needs only reasonable suspicion to make a traffic stop, not probable cause. *Dayton v. Erickson* (1996), 76 Ohio St.3d 2, 11-12. To justify an investigatory stop of a vehicle, the officer must demonstrate specific and articulable facts which, when considered with the rational inferences that can be drawn, justify a reasonable suspicion that the individual to be stopped may be involved in criminal activity, including minor traffic violations. Id. See, also, *Terry v. Ohio* (1968), 392 U.S. 1, 21-22.

{¶ 13} In order to make an arrest, the officer needs probable cause. *State v. Homan* (2000), 89 Ohio St.3d 421, 427 (Superseded by statute on other grounds as

stated in R.C. 4511.19(D)(4)(b).). "Probable cause exists where there is a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious person in the belief that an individual is guilty of the offense with which he or she is charged." *State v. Downen* (Jan. 12, 2000), 7th Dist. No. 97BA53. Or in other words, the standard for determining whether there was probable cause to arrest for driving while under the influence of alcohol or drugs is whether, at the moment of arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence. *Homan*, supra at 427. That determination is based on the totality of the facts and circumstances surrounding the arrest. Id.

{¶ 14} Our analysis will begin with whether the trial court's determination that there was a reasonable articulable suspicion to justify the stop was correct. In formulating an answer to that question, we note the following facts. The police department received a call that Griffith was terminated from her position with Monroe County Care Center for refusing to take a drug test. The employer believed Griffith to be "high" and reported to the police department that she left in her vehicle. Officers Young and Neuhardt responded to the call and began patrolling in the vicinity of Griffith's residence. They got behind her on East Church Street; she was traveling east towards her house and was approximately 300 yards from her house. They began following her and observed that in a 200 yard distance she hit the curb twice on the driver's side. East Church Street is not a one way street, but since parking is allowed on one side of the street it is necessary to travel in the wrong lane when traveling east on East Church Street. Officer Young described the nature of her driving as a "slow veer." The officers followed her to her house, when she stopped, the officers activated the lights and initiated the stop.

{¶ 15} Considering both the officers' observations of Griffith's driving and the report made by Monroe County Care Center, there was reasonable articulable suspicion for the stop. *State v. Stanley*, 9th Dist. No. 23832, 2008-Ohio-4840, ¶9-11 citing *State v. Mittiga* (July 3, 1996), 9th Dist. No. 17616. While a tip from an informant alone may not be sufficient to justify a reasonable articulable suspicion of criminal

activity, when there is independent police corroboration through observation of the driver repeatedly weaving within her own lane within in a short distance, it does amount to a reasonable articulable suspicion of criminal activity. *Stanley*, supra. Thus, there is no merit with Griffith's assertion that there was no reasonable suspicion to justify the stop.

{¶ 16} The analysis now turns to whether there was probable cause for the arrest. As stated above, the officers observed her hit the curb twice within a 200 yard distance. When Officer Young approached the car, the first thing he asked Griffith was about hitting the curb. Her response was "What curb?" He indicated that during their conversation, Griffith would just sit there, staring straight ahead. He indicated it was "[a]lmost like I was just talking to nobody." He asked Griffith to exit the car. She complied, however, she stumbled getting out of the car and leaned against it. Officer Young also noted her pupils; they were small and like pencil lead. However, he also indicated that her speech was not slurred and there was no odor of alcohol emanating from her. No field sobriety tests were performed.

{¶ 17} The lack of field sobriety tests alone does not indicate that there was no probable cause for the arrest. "The totality of the facts and circumstances can support a finding of probable cause to arrest even where no field sobriety tests were administered or where * * * the test results must be excluded[.]" *Homan*, 89 Ohio St.3d at 427. Observations made during the stop may contribute to the totality of the circumstances analysis bearing upon probable cause. *State v. Vonalt*, (9th Dist. No. 10CA0103-M, 2011-Ohio-3883, ¶12.

{¶ 18} Furthermore, the lack of an odor of alcohol does not indicate that there was no probable cause for the arrest. Driving under the influence means either being impaired by alcohol **or by drugs**. If a driver is impaired by use of drugs, which was suspected in this case, there will be no odor of alcohol. Thus, merely because there was no odor of alcohol does not mean that Griffith was not under the influence.

{¶ 19} In addition to the report made to the police department and Officer Young's observations of Griffith's driving, there were other indications of impairment. First, there was Griffith's behavior. She was staring straight ahead and Officer Young indicated that he felt that he was talking to himself. Also, when he asked her about the

curb, her answer of "what curb" is an indication that she was unaware that she hit the curb and/or that the street had a curb. Either indication is odd considering the officers witnessed her hit the curb twice. Second, Officer Young noted that her pupils were small and like lead. This is also odd considering that this stop occurred around midnight. At that time of night normal human pupils would not be constricted in that manner. Lastly, Officer Young observed Griffith stumble out of the car and lean on the car while he was talking to her.

{¶ 20} Considering all of these facts, there was sufficient information to cause a prudent person to believe that Griffith was driving under the influence. Thus, Griffith's assertion that there was no probable cause for the arrest is also meritless. Therefore, as there was a reasonable articulable suspicion to warrant the stop and there was probable cause to support the arrest, the trial court's ruling on the motion to suppress was correct.

{¶ 21} For the foregoing reasons, the judgment of the trial court is hereby affirmed.


Donofrio, J., concurs.
DeGenaro, J., concurs.