JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, the state of Ohio, appeals the judgment of the Cuyahoga County Court of Common Pleas that granted the motion to suppress of appellee, Clarence Golly, and dismissed the action. For the reasons stated herein, we affirm.
 {¶ 2} On December 8, 2006, Golly was indicted on one count of possession of drugs in violation of R.C. 2925.11. Golly pled not guilty to the charge. Thereafter, Golly filed a motion to suppress and the trial court held a hearing on the matter.
 {¶ 3} At the suppression hearing, Officer Troy Edge of the Cleveland Police Department testified to events that occurred on November 6, 2006. On that date, Officer Edge was working as a patrol officer in the area of 2211 Hamilton Avenue in Cleveland. Officer Edge described the area as an industrial area. While patrolling the area with his partner around 6:00 p.m., Officer Edge observed Golly walking with two other individuals and carrying a plastic container in his hands. Officer Edge testified that Golly made eye contact with his marked zone car and "he kind of flinched quickly and shoved something under his coat, inside of his coat."
 {¶ 4} Believing that Golly had an open container, Officer Edge and his partner exited their zone car and approached Golly. The officers had all three individuals put their hands on a wall, and Officer Edge began to pat down Golly. Officer Edge found inside of Golly's coat a plastic container with beer in it. Officer Edge testified that Golly was "kind of tipsy, not real drunk but a little tipsy I would say at that point. We *Page 4 
decided to arrest him and, as I continued my search of him, in his right front pants pocket I found two rocks of crack cocaine."
 {¶ 5} Upon further questioning, Officer Edge stated that he was arresting Golly "for open container and being too intoxicated" and that this was "for his own well-being." When asked what observations he made at the time he decided to arrest Golly, Officer Edge stated, "[I]f somebody's unable to care for themselves [sic] or they're in an intoxicated state so much that they can't, then it's our procedure to take them to jail. * * * Or to take them somewhere that someone else can care for them."
 {¶ 6} On cross-examination, Officer Edge testified that the individuals with whom Golly was walking were not engaged in any criminal activity and that the only reason Officer Edge stopped Golly was because he believed Golly had an open container. Officer Edge described the container as being a plastic Pepsi bottle, "like a sippy or something" that "you would get at a gas station." He later stated that he believed the bottle was marked "Pepsi" and that the bottle was not clear, so he was not able to observe the type of liquid in the bottle. At the point in time that Officer Edge observed Golly place the plastic bottle in his coat, he did not know what substance or liquid was in the container. He conceded that the substance could have been Mountain Dew. Officer Edge testified that at the time he stopped Golly, Golly was not free to leave. Officer Edge was not aware of whether his partner issued Golly a citation for having an open container. *Page 5 
 {¶ 7} Officer Edge further testified that Golly was placed under arrest for having an open container, that Officer Edge did not further search Golly until after he was placed under arrest, that Golly's hands were placed in handcuffs behind his back, that Golly was placed in custody and was not free to leave, and that during this further search the suspected rocks of crack cocaine were found in Golly's pants pocket.
 {¶ 8} On re-direct examination, Officer Edge testified that when he approached Golly, Golly smelled of alcohol. Officer Edge stated that when he started speaking to Golly, he believed Golly was drunk. Officer Edge further stated that Golly "couldn't stand still, he was rocking and had * * * bloodshot eyes and I could smell the alcohol." When Officer Edge was again asked what factors he considered in taking Golly into custody, he responded that it was both the open container and Golly's inability to care for himself. No further details were testified to as to what circumstances or behavior established that Golly was unable to care for himself.
 {¶ 9} Following the suppression hearing, the trial court granted the motion to suppress and dismissed the action. The trial court indicated at the conclusion of the hearing that the pat-down search was not justified, stating: "[I]t's hard to see how they were patting him down for their own safety when his hands were handcuffed behind his back." *Page 6 
 {¶ 10} The state has appealed this ruling and has raised one assignment of error for our review that provides the following: "Whether the court erred in suppressing evidence seized during a pat down prior to taking an intoxicated person into custody."
 {¶ 11} The standard of review regarding motions to suppress is set forth by the Ohio Supreme Court as follows:
 "Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence.
 "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard."
State v. Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372 (internal citations omitted).
 {¶ 12} In this case, the state argues that the actions of the police were proper and that the motion to suppress should have been denied. Golly counters that the stop, arrest, and search were unjustified.
 {¶ 13} Warrantless searches and seizures are per se unreasonable under the Fourth Amendment, subject to only a few well-recognized exceptions.Katz v. United States (1967), 389 U.S. 347. One of those exceptions is the rule regarding investigative stops, announced in Terry v. Ohio
(1968), 392 U.S. 1. Under Terry, a police officer may stop and detain an individual if the officer possesses a reasonable *Page 7 
suspicion, based upon specific and articulable facts, that criminal activity may be afoot. Id. at 9; see, also, State v. Andrews (1991),57 Ohio St.3d 86. To justify an investigative stop, the officer must be able to articulate specific facts which would warrant a reasonably prudent police officer to believe that the person stopped has committed or is committing a crime. See, Terry, 392 U.S. at 27. Reasonable suspicion allows for a brief investigative stop, which is something short of an arrest.
 {¶ 14} In this case, Officer Edge testified that he spotted Golly walking in an industrial area with a container in his hand and that he observed Golly, upon seeing the patrol car, make a furtive movement with the container to the inside of his coat. Upon these facts, we find that Officer Edge could reasonably suspect that Golly had engaged in an open container violation. Therefore, Officer Edge was justified in making an investigatory stop.
 {¶ 15} Officer Edge also was justified in continuing the investigation as to the open container not only because of Golly's furtive movement with the container, but also because Officer Edge observed that Golly was tipsy and he "couldn't stand still, he was rocking and had * * * bloodshot eyes and I could smell the alcohol." Upon finding a container of beer on Golly, Officer Edge proceeded to arrest him. Although we find that the initial investigatory stop was warranted, it is apparent from the record that the ensuing arrest and subsequent search were not justified because possession of an open container is a minor misdemeanor. *Page 8 
 {¶ 16} As recognized by one court, "A violation of the open-container statute, R.C. 4301.62, is punishable as a minor misdemeanor. While the protections of the Ohio and the federal constitutions against warrantless and unreasonable seizures and searches are generally coextensive, see State v. Robinette, 80 Ohio St.3d 234, 245,1997-Ohio-343, 685 N.E.2d 762, in State v. Brown, 99 Ohio St. 3d 323,2003-Ohio-3931, 792 N.E.2d 175, syllabus, the Ohio Supreme Court held that the Ohio Constitution provides a greater protection than the Fourth Amendment `against warrantless arrests for minor misdemeanors.' Police officers may briefly detain, but may not conduct a custodial arrest, or a search incident to that arrest, for a minor-misdemeanor offense when none of the R.C. 2935.26 exceptions apply. See State v. Brown, at ¶ 25. Under the facts of the initial stop, a search of [defendant's] person was not permissible because none of the statutory exceptions applied."State v. Riggins, Hamilton App. No. C-030626, 2004-Ohio-4247.
 {¶ 17} Upon the record before us, we do not find any of the exceptions outlined in R.C. 2935.26 existed to justify arresting Golly for the minor misdemeanor offense. R.C. 2935.26 provides in relevant part:
 "(A) Notwithstanding any other provision of the Revised Code, when a law enforcement officer is otherwise authorized to arrest a person for the commission of a minor misdemeanor, the officer shall not arrest the person, but shall issue a citation, unless one of the following applies:
 "(1) The offender requires medical care or is unable to provide for his own safety. *Page 9 
 "(2) The offender cannot or will not offer satisfactory evidence of his identity.
 "(3) The offender refuses to sign the citation.
 "(4) The offender has previously been issued a citation for the commission of that misdemeanor and has failed to do one of the following: (a) Appear at the time and place stated in the citation; (b) Comply with division (C) of this section."
 {¶ 18} In this case, the state argues that R.C. 2935.26(A)(1) applies in that Golly was "unable to provide for his own safety." However, there is a lack of evidence in the record to establish this exception was met. Indeed, the record reflects that Golly was "walking" down the street with two other individuals, that Golly, upon spotting the patrol car, had the presence of mind to conceal the container he was holding, and that the officer observed Golly as being "kind of tipsy, not real drunk." There was no indication that Golly was being unruly, could not follow orders, or was engaged in any behavior such that it could be reasonably concluded that Golly was "unable to provide for his own safety."
 {¶ 19} The state also cites to the case of State v. Lozada,92 Ohio St.3d 74, 2001-Ohio-149, by way of analogy, in support of the officer's actions in this case. We do not find Lozada to be relevant herein. InLozada, the court held that "during a routine traffic stop, it is reasonable for an officer to search the driver for weapons before placing the driver in a patrol car, if placing the driver in the patrol car during the investigation prevents officers or the driver from being subjected to a dangerous condition and placing the driver in the patrol car is the least intrusive means to avoid *Page 10 
the dangerous condition." Id. Ironically, in Lozada the court found that the search of the driver was unreasonable, stating "the state gives no reason, let alone a safety-based reason, why the defendant would have had to accompany Trooper Davies to his patrol car." Likewise, in this case, the state failed to establish that the safety of the officers or the defendant was at risk.
 {¶ 20} As Golly's arrest was improper, a search incident to an arrest would not have been justified. Also, a pat-down search for weapons would not have been proper because there is no evidence in the record which indicates that the officers had an objectively reasonable belief that appellant or his companions were armed or presently dangerous. SeeTerry, 392 U.S. 1. Therefore, the drugs that were subsequently found on Golly's person were properly suppressed.
 {¶ 21} The state's sole assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 11 
 CHRISTINE T. MCMONAGLE, J., and MARY J. BOYLE, J., CONCUR. *Page 1