[Cite as *State v. Hamilton*, 2011-Ohio-3835.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 95720

## STATE OF OHIO

DEFENDANT-APPELLANT

vs.

## CHRISTOPHER HAMILTON

PLAINTIFF-APPELLEE

## JUDGMENT:
## AFFIRMED

Criminal Appeal from the
Cuyahoga County Common Pleas Court
Case No. CR-536194

**BEFORE:** E. Gallagher, J., Blackmon, P.J., and Rocco, J.

RELEASED AND JOURNALIZED:     August 4, 2011


ATTORNEYS FOR APPELLANT

William D. Mason
Cuyahoga County Prosecutor
BY:    Brad S. Meyer
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

ATTORNEY FOR APPELLEE

Timothy F. Sweeney
Law Office-Timothy Farrell Sweeney
The 820 Building, Suite 430
820 West Superior Avenue
Cleveland, Ohio   44113




EILEEN A. GALLAGHER, J.:

{¶ 1}  The state of Ohio appeals from the decision of the trial court, granting

Christopher Hamilton's motion to suppress.   The state argues that the arresting officer acted

within the bounds of the law when searching Hamilton's vehicle and, therefore, the trial court

erred when granting the motion to suppress.   Finding no merit to this appeal, we affirm the

decision of the trial court.

**{¶ 2}**  On April 21, 2010, a Cuyahoga County Grand Jury indicted Hamilton with one count of having a weapon while under disability and one count of carrying a concealed weapon arising from an April 7, 2010 arrest made by Sergeant Darren Senft of the Warrensville Heights Police Department. After Senft arrested Hamilton, he searched his vehicle and recovered a .40 caliber Glock semi-automatic handgun.

**{¶ 3}**  On June 3, 2010, Hamilton moved to suppress the handgun. The trial court conducted a hearing on that motion on July 28, 2010, at which time the state presented the testimony of one witness, Senft. The trial court's factual findings are as follows:

**{¶ 4}**  "The following facts are derived exclusively from the testimony of the state's sole witness, Sgt. Darren Senft:

"On April 7, 2010, at approximately 2:00 a.m. Warrensville Heights Police Sergeant Darren Senft ('Sgt. Senft') was called to handle a disturbance involving a number of females. While he was dealing with these females 'it was learned' that they were witnesses to a shooting incident occurring in Maple Heights, Ohio. Maple Heights police were contacted and informed that Warrensville Heights police had material witnesses to the Maple Heights incident.

"A Maple Heights officer showed up on-scene. '[W]hile we were assisting them with interviewing all the females there was a dark-colored late-model black Buick Regal that pulled out onto the street.' Tr. 21:5. 'The vehicle pulled on to [sic] the street, quickly backed out and drove off at a high rate of speed.' Tr. 21:9. Sgt. Senft testified that because police vehicles were 'completely blocking the street at that point in time,' the only thing the driver of the Buick could have done was turn around. Tr. 21:9; 33:7.

"At that time, Sgt. Senft did not know anything about the defendant's vehicle, but he was asked by the Maple Heights officer to pursue it and stop it. Tr. 21:21; 22:2; 47:18. According to Sgt. Senft, 'I went after the vehicle, looked for it. And I did

find the vehicle as it was pulling onto Warrensville Center Road, I got behind the vehicle and it was traveling slower than normal. It went from the right lane into the left lane without using its turn signal * * * I initiated a traffic stop for traveling at lower than posted speeds.' Tr. 22:16. At this time it was Sgt. Senft's understanding '[t]hat the party in the vehicle may have been involved in an incident in Maple Heights.' Tr. 30:10.

"Before the vehicle came to a complete stop, Sgt. Senft noticed the driver 'leaning over towards the right passenger side * * * And continued to lean over in that area and then quickly sat back up in his seat.' Tr. 23:15; 24:8. At that time, 'we conducted a felony stop. I had a backup officer at this point. We conducted a felony stop of the vehicle, ordered him out at gunpoint and he was taken back to my vehicle. He was taken into custody without any incident. He was handcuffed, placed in my car.' Tr. 25:22. At this point, defendant 'was no longer a threat.' Tr. 48:23.

"Sgt. Senft testified that 'under normal circumstances [he] would not have arrested someone for failure to use a signal before changing lanes. * * * [e]specially if [he] found out later during [the] investigation [that the driver] had no active warrants, * * * a valid driver's license, and * * * insurance.' Tr. 36:7, 37:8. Sgt. Senft testified further that it was not until he had the defendant in his squad car that he asked for and obtained defendant's driver's license. Tr. 34:24, 35:3. The State produced no evidence or testimony that defendant was charged with or cited for any traffic offenses.

"Sgt. Senft testified that he 'held Mr. Hamilton for Maple Heights' and 'searched' his vehicle; that 'while searching his vehicle, incident to the tow, a loaded .40 caliber semiautomatic Glock was located and found inside of an unlocked glove box * * *.' Tr. 27:6. He testified that 'after the vehicle was inventoried, Maple Heights asked us to hold on to it * * * so the vehicle was placed in our rear lot.' Tr. 29:18, 39:11.

"According to Sgt. Senft, Warrensville Heights has a tow policy; this policy was never produced at the hearing. Sgt. Senft testified that '[w]henever we tow a vehicle we complete a tow inventory on the vehicle.' Tr. 28:5, 17. Sgt. Senft testified further that he is allowed to have a car towed and search the vehicle '[u]nder traffic arrests, if no owner is present, abandoned motor vehicles * * *.' Tr. 28:19. Then Sgt. Senft testified that defendant's car was not towed; that it was driven by an officer to the Warrensville Police Department. Tr. 39:25.

"Sgt. Senft testified that after defendant was handcuffed and in custody in the squad car, getting a search warrant was 'an option,' and that he can 'type up a search warrant in 20 minutes.' Tr. 38:10; 48:21. Finally, Sgt. Senft testified that 'it would have been no problem to get a search warrant * * * [b]ut if I'm towing a vehicle I'm also not obtaining a search warrant'; that '[a]s a normal course, it's not necessary, if you're towing a vehicle, to get a search warrant.' Tr. 41:24; 48:15."

{¶ 5} On September 9, 2010, the trial court granted the motion to suppress. The state appeals, raising a single assignment of error:

{¶ 6} "The trial court erred when it granted Appellee's motion to suppress."

{¶ 7} The state argues that Senft acted lawfully in searching Hamilton's car because (1) Hamilton's traffic violations and his furtive movements towards the passenger compartment provided the reasonable suspicion that Hamilton was armed, which allowed for a stop and search of the passenger compartment; and (2) the search was a valid inventory search. We disagree with both arguments.

{¶ 8} "Our standard of review with respect to motions to suppress is whether the trial court's findings are supported by competent, credible evidence. * * * This is the appropriate standard because 'in a hearing on a motion to suppress evidence, the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses. However, once we accept those facts as true, we must independently determine, as a matter of law, and without deference to the trial court's conclusion, whether the trial court met the applicable legal standard.'" *State v.*

*Lloyd* (1998), 126 Ohio App.3d 95, 709 N.E.2d 913; *State v. Crosby*, Cuyahoga App. No. 86393, 2006-Ohio-2227.

{¶ 9}  The Fourth Amendment to the United States Constitution provides: "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."   The state bears the burden of establishing that a warrantless search is reasonable pursuant to one or more exceptions to the Fourth Amendment's warrant requirement.   *Xenia v. Wallace* (1998), 37 Ohio St.3d 216, 524 N.E.2d 889,   paragraph two of the syllabus; *Crosby.*   Here, the state relied upon both reasonable suspicion that Hamilton was armed and the "inventory search" exception.

{¶ 10} We find the state's argument that Hamilton's actions provided the reasonable suspicion necessary to allow for a search of the passenger compartment misplaced.   The state's reliance on *State v. Thomas*, Cuyahoga App. No. 93918, 2010-Ohio-4132, is factually distinguishable.   In *Thomas*, this Court held that where the suspect is in an automobile and the officer has reasonable articulable suspicion that the suspect is armed or dangerous, the officer may search those areas of the passenger compartment that could contain weapons. However, this case, unlike *Thomas*, involved a search incident to an arrest.   Senft testified that he arrested and placed Hamilton in the back of the police car well before he searched Hamilton's vehicle.   The defendant in *Thomas*, was not under arrest at the time of the search and, as the *Thomas* court noted, "once Thomas was issued a traffic citation, he would be

returning to his vehicle and have access to the console." Hamilton, by contrast, had been placed under arrest and would not be returning to his car but, instead, would be on his way to the Maple Heights Police Department. Accordingly, we find no merit to this portion of the state's argument.

{¶ 11} We agree with the trial court's conclusion that Senft had no probable cause to place Hamilton under arrest. Senft observed Hamilton make two traffic violations and then lean over into the passenger compartment area. He described this as a furtive gesture, which precipitated a felony stop. Senft immediately placed Hamilton under arrest at gunpoint. However, Senft provided no testimony or other evidence to explain why he arrested Hamilton. At the time of Hamilton's arrest, the Maple Heights Police Department, not Senft of the Warrensville Heights Police Department, merely suspected that Hamilton may have been involved in the shooting in Maple Heights. Specifically, Senft testified that "we were called to * * * a disturbance involving a number of females. Evidently those females were involved in an incident in Maple Heights during which there was a shots-fired call. There was a number of shots fired, a number of females involved during that incident * * *." Tr. 21. The state presented no evidence that any male was involved in this shots-fired incident. The trial court correctly concluded that while this may be sufficient to justify a *Terry* stop, it could not justify an arrest. See *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20

L.Ed.2d 889.

{¶ 12} Additionally, at the time Sergeant Senft stopped Hamilton, he had committed only minor traffic violations for which he could not lawfully be arrested.[1]   Both Section 14, Article I of the Ohio Constitution and R.C. 2935.26 prohibits warrantless arrests for minor misdemeanors unless certain statutorily enumerated exceptions apply.   *State v. Golly*, Cuyahoga App. No. 89481, 2008-Ohio-447; *State v. Brown*, 99 Ohio St.3d 323, 2003-Ohio-3931, 792 N.E.2d 175.   There is no record before this court that the state presented evidence that any of the R.C. 2935.26 exceptions applied.

{¶ 13} Finally, we deal with the state's claim that the search of Hamilton's car was a lawful "inventory search."   The inventory exception to the Fourth Amendment's warrant requirement permits police to conduct a warrantless search of a vehicle in order to inventory its contents after the vehicle has been lawfully impounded.   *State v. Mesa*, 87 Ohio St.3d 105, 1999-Ohio-253, 717 N.E.2d 329; *Crosby.*   The rationale for excluding inventory searches from the warrant requirement is that inventory searches are an administrative or caretaking function, rather than an investigative function.   *S. Dakota v. Opperman* (1976), 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000; *Crosby.*

{¶ 14} In a departure from long-established precedent, the United States Supreme

---

[1] R.C. 4511.39(B) defines failure to use a turn signal before turning or changing lanes as a minor misdemeanor traffic offense.

Court significantly narrowed the parameters of searches conducted incident to arrests. In *Arizona v. Gant* (2009), 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485, the Supreme Court specifically held that police officers may search a vehicle incident to arrest only where the suspect is within reaching distance of the vehicle, or there is reason to believe evidence of the arresting offense will be present in the vehicle. Id. at 491. This court has since upheld the reasoning outlined in *Gant*, see *State v. Thomas*, Cuyahoga App. No. 91891, 2009-Ohio-3461.

{¶ 15} In agreeing with Gant that the motion to suppress should have been granted, the Supreme Court reasoned that because Gant had been arrested, handcuffed, and detained in a patrol car, he had no possible ability to regain access to his vehicle. Id. Further, Gant was arrested for driving with a suspended license, for which no related evidence of this conduct could be found inside the vehicle. Id. The court held the search to be invalid. Id.

{¶ 16} Similarly, in *Thomas*, police officers observed Thomas failed to use his turn signal and arrested him for driving without a license, handcuffed him and placed him in the back of the patrol car. The officers then searched the vehicle and found two bags of crack cocaine in the glove box. Id. Following the reasoning outlined in *Gant*, this Court held that because the officers handcuffed and placed Thomas in a patrol car where he no longer posed a risk to officer safety, and because there would be no evidence of the offense of

driving with a suspended license present in the vehicle, the search of Thomas's vehicle was illegal. Id.

{¶ 17} Accordingly, because Senft arrested, handcuffed, and placed Hamilton in the rear of the police car, Hamilton neither posed a threat to the officers' safety, nor did he have any possible ability to regain access to his vehicle. Moreover, Senft could not possibly expect to find evidence of the minor traffic violations Hamilton committed inside the vehicle. A search incident to arrest under these circumstances is clearly not permitted under *Gant* and *Thomas.*

{¶ 18} Furthermore, the inventory search exception to the warrant requirement does not apply in the present case because Hamilton's vehicle was never lawfully impounded. See *Crosby.* There was no evidence in the record to indicate the vehicle was unlawfully parked, which would have required a tow. Additionally, the state produced no evidence of any legitimate reason to have the vehicle towed or impounded: Hamilton produced a valid driver's license, and there was no evidence that his vehicle was unregistered or unsafe. Moreover, Senft admitted that Hamilton's vehicle was not actually towed; another officer drove the vehicle from its parking spot to the Warrensville Heights Police Station. Senft simply testified that the vehicle was searched incident to a tow, and that the Maple Heights Police Department wanted the vehicle.

{¶ 19} Based on the foregoing, we agree with the trial court's conclusion that the

search of Hamilton's vehicle was illegal. Accordingly, the state's sole assigned error is overruled.

Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said lower court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

EILEEN A. GALLAGHER, JUDGE

PATRICIA A. BLACKMON, P.J., and
KENNETH A. ROCCO, J., CONCUR