[Cite as *State v. Huey*, 2011-Ohio-5496.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 96168

---

## STATE OF OHIO

PLAINTIFF-APPELLANT

vs.

## JAMES HUEY

DEFENDANT-APPELLEE

---

## JUDGMENT:
## AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-536469

**BEFORE:** Kilbane, A.J., Celebrezze, J., and Keough, J.

**RELEASED AND JOURNALIZED:** October 27, 2011

-i-

**ATTORNEYS FOR APPELLANT**

William D. Mason
Cuyahoga County Prosecutor

BY: Maxwell M. Martin
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

**ATTORNEY FOR APPELLEE**

Dennis F. Butler
2401 Superior Viaduct
Cleveland, Ohio 44113

MARY EILEEN KILBANE, A.J.:

{¶ 1} Plaintiff-appellant the state of Ohio appeals from the trial court order that granted the motion to suppress evidence filed by defendant-appellee James Huey.

{¶ 2} The state presents one assignment of error. The state argues the trial court incorrectly determined the police investigative search conducted of Huey violated the Fourth Amendment's prohibition against unreasonable searches and seizures. Upon a review of the record, this court disagrees. Consequently, the trial court's order is affirmed.

{¶ 3} Huey was indicted in this case on three counts — having a weapon while under disability, carrying a concealed weapon, and possessing a defaced firearm, all with forfeiture specifications, based upon an incident that occurred on April 15, 2010 at

approximately 1:50 a.m. During their testimony at the hearing on Huey's motion to suppress evidence, the state's two witnesses provided differing accounts of the incident.

**{¶ 4}** East Cleveland police officer Brandon Zinner testified that he was on routine patrol with his sergeant when he observed a vehicle that appeared to be "drag racing" with another. The two officers followed the vehicles, lost sight of the second vehicle, but saw the first one "run a red light at Superior [Avenue] and Coventry [Road]."[1] The officers conducted a traffic stop of the vehicle.

**{¶ 5}** When the vehicle stopped, Zinner observed four men inside; the officers called for back up before approaching. Officer Robert Nicholson responded.

**{¶ 6}** Nicholson testified the sergeant directed him to assist Zinner at the passenger side of the vehicle. Nicholson stated there were three men inside the car. He also stated that, as the sergeant spoke to the driver, Nicholson walked toward the car and saw the rear-seat passenger, Huey, lean down.

**{¶ 7}** Nicholson testified he asked Huey to place his hands on the front seat headrest. Rather than complying, Huey "kept his hands down and he was still moving," so Nicholson repeated the request.

---

[1] Quotes indicate testimony presented at the hearing on Huey's motion to suppress evidence.

{¶ 8}   Nicholson testified that Huey then obeyed, and, at that time, Nicholson used his flashlight to illuminate the floor area; he observed that Huey had an open beer can between his feet.   Nicholson testified that this was an "arrestable offense."

{¶ 9}   Nicholson stated he told Huey to step out of the vehicle "because [Nicholson did not] know the extent of what he was reaching for."   Nicholson testified he believed Huey had been concealing something.   Nicholson also testified that he asked Huey for identification, but Huey could not produce anything.

{¶ 10} Nicholson stated that he removed Huey from the car and escorted him around to the driver's side before conducting a pat down search; Nicholson offered no explanation for doing so.   Nicholson testified that, as Huey faced the vehicle with his hands on the roof and Nicholson commenced the pat down, Huey dropped his left hand toward his waistband.

{¶ 11} Nicholson stated he "grabbed" Huey's hand and placed it back on the roof, ordered Huey not to do that again, and restarted the pat down.   However, Huey "took his hand and dropped it again."   At that point, Nicholson told Huey he was putting him in handcuffs, but, before Nicholson could follow through, Huey "took his right elbow [and] swung it back," causing Nicholson to duck.   Huey then "took off running."   As Nicholson "tackled him to the ground, [a] gun fell out."

{¶ 12} Zinner recollected the incident differently.   Zinner testified that Nicholson placed Huey in handcuffs as soon as Huey exited the vehicle because Huey had an "open

container" and that was an "arrestable offense." Zinner also stated that Nicholson found the gun during his pat down of Huey's person.

{¶ 13} The police report of the incident, which was introduced as "Defense Exhibit A" and was authored by another officer who responded to the sergeant's call for back up, describes the incident in a manner that corresponds with Zinner's recollection. According to the report, three additional patrol cars arrived on the scene of the traffic stop to assist prior to any of the officer's approach of the stopped vehicle.

{¶ 14} The police report's author indicated Nicholson saw Huey "trying to hide something," so the officers "open[ed] the rear passenger door [and] noticed an opened can of Milwaukee's Best beer on the floor of the vehicle next to Huey's leg." Nicholson removed Huey and placed him in handcuffs. While conducting the search of Huey's person, Nicholson removed a handgun from Huey's front waist area. Huey was then arrested; his companions were "advised and released." The report does not indicate whether the driver received a citation for committing a traffic offense.

{¶ 15} Huey was indicted on three weapons charges. Eventually, his defense attorney filed a motion to suppress evidence. After the state presented Nicholson and Zinner as witnesses, Huey testified.

{¶ 16} Huey admitted he had an open beer can at his feet; he stated the front-seat passenger also had one. Huey testified that the officers asked only the driver to show his hands, and that he and the front-seat passenger were simply "snatched" out of the car.

Huey asserted Nicholson placed him in handcuffs before conducting a pat down, never asked for identification, and that Nicholson took his wallet, his identification, and the gun from his person during the search.

{¶ 17} Upon considering the evidence, the trial court noted Nicholson admitted he had only a "hunch" that Huey was committing a crime when he was leaning forward in the vehicle. The court commented that the police needed more than that to justify removing Huey from the car and placing him in handcuffs prior to conducting a pat down.

{¶ 18} The trial court granted Huey's motion to suppress evidence. In its journal entry, the court stated the officers failed to present an articulable reason for continuing the search beyond the driver because they "did not testify that they were in danger or fear of their safety nor did they observe any criminal conduct or movement that could be considered criminal conduct."

{¶ 19} The state appeals from the trial court's decision, presenting the following assignment of error.

{¶ 20} **"The trial court erred in granting the defendant's motion to suppress."**

{¶ 21} The state argues the trial court improperly applied the law to the facts of this case; the state contends the totality of the circumstances supported Nicholson's actions. This court finds the argument meritless.

{¶ 22} At a suppression hearing, the state bears the burden of establishing that a warrantless search and seizure falls within one of the exceptions to the warrant

requirement. *Xenia v. Wallace* (1988), 37 Ohio St.3d 216, 524 N.E.2d 889, paragraph two of the syllabus. The state also must prove the warrantless search and seizure meets constitutional standards of reasonableness. *Maumee v. Weisner* (1999), 87 Ohio St.3d 295, 297, 720 N.E.2d 507.

{¶ 23} Appellate review of a trial court's ruling on a motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 7, ¶8. This court's standard of review with respect to motions to suppress is whether the trial court's findings are supported by competent, credible evidence. *State v. Lloyd* (1998), 126 Ohio App.3d 95, 100-101, 709 N.E.2d 913; see, also, *State v. Winand* (1996), 116 Ohio App.3d 286, 288, 688 N.E.2d 9, citing *Tallmadge v. McCoy* (1994), 96 Ohio App.3d 604, 608, 645 N.E.2d 802.

{¶ 24} In a hearing on a motion to suppress evidence, the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses. *State v. Hopfer* (1996), 112 Ohio App.3d 521, 548, 679 N.E.2d 321, quoting *State v. Venham* (1994), 96 Ohio App.3d 649, 653, 645 N.E.2d 831. Accepting those facts as true, this court independently determines, as a matter of law and without deference to the trial court's conclusion, whether those facts meet the applicable legal standard. *Burnside*. The record of this case supports the trial court's decision.

{¶ 25} The Fourth and Fourteenth Amendments to the United States Constitution, and the Ohio Constitution, prohibit warrantless searches and seizures, unless an exception

applies. *State v. Williams*, Cuyahoga App. No. 81364, 2003-Ohio-2647, ¶25. One exception to the warrant requirement is the investigatory stop, which is permitted pursuant to *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889.

{¶ 26} This type of exception, however, is "narrowly drawn"; it "allows a police officer without probable cause to stop and briefly detain a person if the officer has a reasonable suspicion based upon specific articulable facts that the suspect is engaged in criminal activity." *State v. Franklin* (1993), 86 Ohio App.3d 101, 103, 619 N.E.2d 1182.

{¶ 27} In deciding whether reasonable suspicion exists, courts must examine the totality of the circumstances of each case to determine whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing on the part of the detainee. *United States v. Arvizu* (2001), 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740; *State v. Bobo* (1988), 37 Ohio St.3d 177, 524 N.E.2d 489, paragraph one of the syllabus, citing, *State v. Freeman* (1980), 64 Ohio St.2d 291, 414 N.E.2d 1044. The investigating officer must be able to point to specific and articulable facts that support his objectively reasonable belief that a crime may be occurring in order for the intrusion to be permitted. *Franklin*, supra.

{¶ 28} In this case, Zinner conducted the initial stop. He testified that the vehicle in which Huey was a passenger was stopped for running a red light. Officers are permitted to stop a vehicle for a traffic violation. *State v. Lanier*, Cuyahoga App. No. 93983, 2010-Ohio-5765, ¶13. The Ohio Supreme Court held, "where an officer has an

articulable reasonable suspicion or probable cause to stop a motorist for any criminal violation, including a minor traffic violation, the stop is constitutionally valid regardless of the officer's underlying subjective intent or motivation for stopping the vehicle in question." *Dayton v. Erickson*, 76 Ohio St.3d 3, 11-12, 1996-Ohio-431, 665 N.E.2d 1091. In *Arizona v. Johnson* (2009), 555 U.S. 323, 129 S.Ct. 781, 172 L.Ed.2d 694, the United States Supreme Court observed that, "[f]or the duration of a traffic stop * * * a police officer effectively seizes 'everyone in the vehicle,' the driver and all passengers."

{¶ 29} Whenever a person's freedom of movement is curtailed by police using either force or a show of authority, that person is "seized" for purposes of a Fourth Amendment analysis. *State v. McFarland* (1982), 4 Ohio App.3d 158,  446 N.E.2d 1106, citing *Dunaway v. New York* (1979), 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824, and *Terry*. The Fourth Amendment requires that any  seizure of a person must be reasonable.  Id.  Nicholson's seizure of Huey in this case did not meet the Fourth Amendment's standard.

{¶ 30} It appears from the transcript of the hearing on Huey's motion that Nicholson seemed to be at a completely different incident scene than Zinner. Nicholson could not remember important details that preceded his approach of the car, but testified he saw Huey making "furtive movements." When Nicholson looked into the car, he saw only an open beer container at Huey's feet. Possession of an open container of alcohol

constituted a minor misdemeanor offense; Nicholson eventually conceded this fact. *State v. Brown* (1992), 83 Ohio App.3d 673, 615 N.E.2d 682.

{¶ 31} The Ohio Supreme Court has held that warrantless arrests for minor misdemeanors are prohibited by the Ohio Constitution because the state constitution provides greater protection than the Fourth Amendment to the Unites States Constitution. Thus, police officers may briefly detain, but may not conduct a custodial arrest, or a search incident to that arrest, for a minor-misdemeanor offense when none of the exceptions set forth in R.C. 2935.26 apply. *State v. Brown*, 99 Ohio St.3d 323, 2003-Ohio-3931, 792 N.E.2d 175, syllabus.

{¶ 32} R.C. 2935.26 provides in relevant part:

{¶ 33} "(A) Notwithstanding any other provision of the Revised Code, when a law enforcement officer is otherwise authorized to arrest a person for the commission of a minor misdemeanor, the officer *shall not arrest* the person, but shall issue a citation, *unless* one of the following applies:

{¶ 34} "(1) The offender requires medical care or is unable to provide for his own safety.

{¶ 35} "(2) The offender cannot or will not offer satisfactory evidence of his identity.

{¶ 36} "(3) The offender refuses to sign the citation.

{¶ 37} "(4) The offender has previously been issued a citation for the commission of that misdemeanor and has failed to [either appear for trial or plead guilty]." (Emphasis added.)

{¶ 38} The record in this case indicates that, upon seeing the open container, Nicholson immediately removed Huey from the vehicle and placed him in handcuffs. His initial justification was that possession of an open container in a motor vehicle was an "arrestable offense." Only after being prompted by the prosecutor did Nicholson mention he was not sure whether Huey was "trying to grab something" and was thus concerned for his safety.

{¶ 39} The record reflects, therefore, that Nicholson immediately arrested Huey based only upon his "leaning down" and his delay in following orders. Since Huey had no opportunity to do anything further, Nicholson's claim that Huey failed to provide identification lacked credibility. Thus, although Nicholson eventually testified that he removed Huey for officer safety, the trial court obviously did not believe him.

{¶ 40} Nicholson's memory of many details of the incident was incomplete, exaggerated, and even contradicted by Zinner. Moreover, the police report failed to indicate either that Huey was making "furtive" movements in the vehicle, that Nicholson feared for anyone's safety when he removed Huey and placed him in handcuffs, or that Huey attempted to escape before Nicholson found the weapon. Under the circumstances, this court cannot substitute its judgment with respect to the witnesses' credibility.

{¶ 41} The facts in this case are easily distinguishable from those presented in *State v. Longshaw*, Cuyahoga App. No. 93676, 2010-Ohio-2781. In *Longshaw*, the officer made a traffic stop for several moving violations, smelled marijuana emanating from the car, and the passenger seemed reluctant to show his hands; the officer then ordered both the driver and the passenger out, and, in patting down the passenger, the officer found a gun. Not only were there several articulable facts, but the defendant was not arrested prior to the pat down.

{¶ 42} Similarly, in *State v. Morris*, Franklin App. No. 09AP-751, 2010-Ohio-1383, the officers made a traffic stop, arrested the driver, and told the passenger, who was not wearing a seat belt and had an open container, to remain in the car; the officers then saw the passenger get out, act nervously, and make a movement that indicated he might have a weapon in his pocket, so they conducted a pat down and found a gun.

{¶ 43} In *State v. Agee*, Cuyahoga App. No. 94035, 2010-Ohio-5074, the officer saw what might have been an aborted drug transaction between the passenger and a person on the street, saw furtive movement between the driver and passenger, and performed a traffic stop; upon opening the passenger's door, the officer saw what appeared to be crack cocaine on the floor. Possession of crack cocaine is a felony offense.

{¶ 44} Both Nicholson and Zinner indicated Huey was arrested merely for possessing an open container of beer.[2] Since the arrest was improper, a search incident to

---

[2]The existence of a formal arrest is dependent upon four requisite elements,

his arrest was unjustified. *State v. Golly*, Cuyahoga App. No. 89481, 2008-Ohio-447, ¶20, citing *Terry*. Also, a pat down search for weapons was improper because the record fails to reflect the officers had "an *objectively reasonable* belief that [defendant] or his companions were armed or presently dangerous." Id. (Emphasis added.) Cf., *State v. Rowe*, Cuyahoga App. No. 95152, 2010-Ohio-6030.

{¶ 45} The trial court in this case committed no error. In light of this court's decision in *Golly*, the state's assignment of error is overruled.

{¶ 46} The trial court's order is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. Case remanded to the trial court for further proceedings.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

---

viz.,
1) an intent to arrest, 2) under real or pretended authority, 3) accompanied by an actual or constructive seizure or detention of the person, and 4) that is so understood by the person arrested. *State v. Barker* (1978), 53 Ohio St.2d 135, 372 N.E.2d 1324, paragraph one of the syllabus.

MARY EILEEN KILBANE, ADMINISTRATIVE JUDGE

KATHLEEN ANN KEOUGH, J., CONCURS;
FRANK D. CELEBREZZE, JR., J., CONCURS
(SEE ATTACHED CONCURRING OPINION)

FRANK D. CELEBREZZE, JR., J., CONCURRING:

**{¶ 47}** I hesitantly concur with the majority in this case, but write separately to express grave concerns for the safety of the officers involved in this case. Three officers could have lost their lives had Officer Nicholson not taken steps to protect himself and his fellow officers. Police officers should not feel constrained to act only upon the most certain of beliefs that someone is armed before initiating a search for officer safety during a traffic stop. All that is required is a reasonable belief that an individual is armed. *State v. Bobo* (1988), 37 Ohio St.3d 177, 524 N.E.2d 489, paragraph two of the syllabus. Whether it is testified to as a reasonable suspicion or a reasonable hunch does not matter. When passengers of a vehicle engage in furtive movements and disobey a basic safety command to show their hands, it gives an officer pause and subjects the non-responsive individual to the further intrusion of a protective pat down search based on that failure. A protective pat-down search is a minimal intrusion in such a situation. However, the specific facts of this case lead me to concur with the majority based on the wildly conflicting testimony of the officers.

**{¶ 48}** The testimony does not establish that Officer Nicholson pulled appellant out of the vehicle for officer safety, but to arrest or investigate based on the observation of an

open container of beer — an offense Officer Nicholson conceded was only punishable by citation. Even if it did, Officer Zinner testified that Officer Nicholson immediately handcuffed Huey and engaged in a full search upon pulling him from the vehicle. Zinner's testimony indicates that Nicholson began pulling things from Huey's pockets and that he eventually found the gun. A search for officer safety does not allow a full search, but only a protective frisk or pat down for weapons. *Adams v. Williams* (1972), 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612. Therefore, I concur with the ultimate judgment in this case.